UNITED FEATURE SYNDICATE,
INC., Plaintiff,

v.

SUNRISE MOLD CO., INC., et
al., Defendants.

Civ. A. No. 82–6050–Civ–JCP.

United States District Court,
S.D. Florida.

Aug. 29, 1983.

**1476**

William J. Gallwey, III, Shutts & Bowen, Miami, Fla., Richard Cieri, Baker & Hostetler, Cleveland, Ohio, for plaintiff.

Herbert L. Fehner, Fort Lauderdale, Fla., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

PAINE, District Judge.

This matter came for trial before the Honorable James C. Paine, United States District Court Judge, on August 26, 1983. The Court having heard the evidence presented by the parties; having examined the exhibits and having reviewed the pleadings and briefs filed herein; and having heard oral argument of counsel for plaintiff and counsel for defendants, and being fully advised in the premises, makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. Plaintiff United Feature Syndicate, Inc. ("plaintiff") is, and at all times relevant has been, a corporation organized and existing under the laws of the State of New York, having its principal place of business at 200 Park Avenue, New York, New York 10166.

2. Defendant Sunrise Mold Co., Inc. ("Sunrise") is and at all times relevant has been a Florida corporation having its place of business in Fort Lauderdale, Florida.

3. Defendant John Gretsky ("Gretsky") resides in Fort Lauderdale, Florida and is an officer and shareholder of Sunrise. Gretsky is and at all times relevant has been a full-time employee of Sunrise and has actively prompted, induced, supervised and/or materially contributed to the business operations of Sunrise. (Gretsky and Sunrise will hereinafter be collectively referred to as "defendants.")

4. The "PEANUTS" comic strip was introduced in the early 1950's. Since that time, the strip has grown enormously in popularity and circulation throughout the United States and overseas to the extent that today it is one of the most popular comic strips in the world.

5. The Register of Copyrights has duly issued to plaintiff the copyright Certificates of Registration and Renewal Certificates which are trial exhibits 17 through 33 for certain issues of United Feature Comics, a periodical published by plaintiff which includes, *inter alia,* the "PEANUTS" comic strip and the characters appearing therein. Plaintiff is the owner of the copyrights evidenced by those Certificates, which copyrights are valid and subsisting.

6. By virtue of careful cultivation by plaintiff of the "PEANUTS" comic strip and characters featured therein, the strip and characters have become an exceptionally valuable property during the last 30 years. Plaintiff currently licenses uses of the characters in conjunction with the sale of goods and services; publishing books featuring the strip and the characters; developing cartoons and feature films from the themes and characters; and authorizing the manufacture and sale of numerous products in the likenesses of or featuring the likenesses of the various characters all of which has resulted in substantial yearly revenues to plaintiff.

7. During the last 30 years, and particularly within the last five to ten years, plaintiff has had to deal with an ever-increasing problem of infringements of its copyrights in the "PEANUTS" comic strip and the characters featured therein.

8. Plaintiff's practice during the early years of the "PEANUTS" comic strip was to resolve copyright infringements on the basis of obtaining a simple agreement from the infringer to cease his infringing conduct. This proved ineffective in controlling infringements, and plaintiff in the early 1970's began demanding that the infringer cease his infringing conduct and pay his profits to plaintiff. This, too, proved ineffective in curtailing infringements, so in the late 1970's, in an effort to curtail infringe-ments, plaintiff implemented a policy of demanding statutory damages as provided for in the Copyright Act in addition to the cessation of infringing activity.

9. Over the years, plaintiff has occasionally experienced problems with the manufacture and sale of unauthorized plaster molds and figures in the likenesses of the "PEANUTS" characters. However, beginning in 1981, the plaster molds and figures infringement problem began to escalate at an alarming rate. In 1982 and the early months of 1983, twenty to twenty-five percent of the nearly three hundred infringements of the "PEANUTS" copyrights of which plaintiff was aware involved unauthorized plaster molds or figures. Plaintiff has incurred substantial expense in pursuing such infringements of its copyrights.

10. Plaintiff has had great difficulty in uncovering the manufacturers of unauthorized plaster molds and figures due to the failure of wholesalers and retailers of the plaster items to maintain records of the individuals or entities from whom the plaster items were purchased. Plaintiff has, therefore, been required to pursue the wholesale and retail distributors of the infringing items in order to protect its rights and in an effort to halt the infringing activity.

11. No person, corporation or other entity has ever been authorized by plaintiff to manufacture, distribute, display for sale or sell any plaster molds featuring any "PEA-NUTS" character. In fact, plaintiff has consistently refused to authorize the use of any mold in the likeness of any of the "PEANUTS" characters because of the inability to control the quality of items manufactured from a mold. Specifically, plaintiff has never authorized defendants to manufacture, distribute, display for sale or sell any plaster molds bearing likenesses of any "PEANUTS" character.

12. Since 1969, defendants have been in the business of manufacturing and selling plaster molds and plaster and greenware figures.

13. Defendants sell plaster molds and plaster and greenware figures throughout the United States.

14. In the fall of 1980, defendants state that they purchased at least 12 sets of plaster molds, which sets contained one mold in the likeness of each of the "PEANUTS" characters "Snoopy," "Snoopy" in his pose as "World War I Flying Ace" (often erroneously referred to as the "Red Baron"), "Woodstock," "Charlie Brown," "Lucy," "Linus," "Pig Pen" and "Sally" and one mold of Christmas ornaments bearing the likenesses of the "PEANUTS" characters "Snoopy" and "Woodstock." One set of these molds are trial exhibits 3 through 11.

15. Defendants purportedly purchased the molds referred to in paragraph 14 above from an individual who defendants state they can only identify as "Chuck." Defendants state that the molds were paid for in cash, that no receipt was obtained, and that no records exist of the precise number of sets of molds which were actually purchased.

16. In approximately the fall of 1981, defendants contend that they purchased no less than 50 to 60 additional molds in the likenesses of the "PEANUTS" characters identified in paragraph 14 above. These molds were miscellaneous portions of the sets of molds referred to in paragraph 14 above and were purportedly purchased from the individual known to defendants only as "Chuck." Defendants contend that the molds were paid for in cash, that no receipt was obtained and that no records exist of the actual number of molds purchased.

17. Defendants state that they sold all of the molds in the likenesses of the "PEANUTS" characters which they purportedly purchased from "Chuck" between the fall of 1980 and November, 1981. Defendants contend that they cannot identify the names of the individuals or entities who purchased these molds since all of their records of sales prior to 1982 were destroyed in a series of no less than five floods during the years 1974 through 1981.

18. In approximately October, 1981, defendants created and manufactured a mold of a dog which they sold under the name of "Fred." Defendants contend that they do not know how many of the "Fred" molds were manufactured, sold or distributed by them. One of the "Fred" molds is trial exhibit 12.

19. The "Fred" mold was created by defendants in order to have an item which would compete in the established market for the "Snoopy" character items.

20. The "PEANUTS" character molds referred to in paragraphs 14 and 16 above are substantially similar to the "PEANUTS" characters "Snoopy," "Snoopy" in his pose as "World War I Flying Ace," "Woodstock," "Charlie Brown," "Lucy," "Linus," "Pig Pen" and "Sally."

21. The "Fred" mold referred to in paragraph 18 above is substantially similar to the "PEANUTS" character "Snoopy."

22. Defendants knew at the time they purchased and sold the "PEANUTS" character molds referred to in paragraphs 14 and 16 above, that those molds were illegal infringements of copyrights in the "PEANUTS" comic strip characters, or "gypsy" molds as these illegal items are known in the plaster industry.

23. On December 9, 1981, defendants received a letter from plaintiff's general counsel stating that their sales of plaster molds in the likenesses of the "PEANUTS" characters were unauthorized and illegal.

24. Defendants concluded that the letter of plaintiff's counsel referred to in paragraph 23 above was instructing them not to sell any molds in the likenesses of the "PEANUTS" characters, including the "Fred" mold.

25. Nevertheless, after receiving the letter from plaintiff's counsel referred to in paragraph 23 above, defendants sold one or more of the "Fred" molds.

26. Several years prior to the filing of the complaint, defendants were aware that there was a federal copyright law that grants to creators of original works, including comic strips, the exclusive authorization to reproduce those works if certain procedural requirements are met.

27. Prior to the filing of the complaint, defendants knew that the "PEANUTS" comic strip and the characters featured in that comic strip were protected by federal copyright laws.

28. Defendants obtained copyrights in certain plaster molds and figures created by them several years prior to the filing of the complaint and affixed a copyright notice line to said items identifying them as being copyrighted by Sunrise Mold Co., Inc.

29. After obtaining copyrights on the items referred to in paragraph 28 above, defendants concluded that it was too costly to continue copyrighting their creations. Defendants nevertheless continued to affix a notice line on molds they created indicating that they were copyrighted by Sunrise Mold Co., Inc., but they deleted the year from the notices placed on molds for which a copyright had not been obtained. The "Fred" mold referred to in paragraph 18 above bears such a false notice of copyright.

30. Defendants have caused to be printed and distributed and/or sold a catalog picturing a portion of the items offered for sale by Sunrise. Although the majority of the molds pictured in these catalogs were not copyrighted by defendants, each catalog indicated that the molds pictured therein were covered by copyrights owned by Sunrise Mold Company, Inc.

31. Defendants falsely indicated that the molds referred to in paragraph 29 above and the items pictured in the catalogs referred to in paragraph 30 above were under the copyright of Sunrise Mold Co., Inc. in order to protect the molds and items pictured in the catalog from being copied and sold by others in the plaster industry.

32. The use of false notices of copyright on molds is prevalent in the plaster industry as is the sale of molds which are copied from another's original creations.

33. Duplicate molds can be made from the molds such as the "PEANUTS" character molds referred to herein.

34. Each of the "PEANUTS" character molds referred to herein can be used to manufacture between 100 and 200 unau-thorized figures in the likenesses of the "PEANUTS" characters.

35. The manufacture, distribution and/or sale of the molds referred to in paragraphs 14, 16 and 18 above was done without the consent of plaintiff.

36. The plaster industry is very closely-knit such that knowledge of this lawsuit has spread to individuals in the industry who have no direct dealings with defendants.

37. The distribution and/or sale of the molds referred to in paragraphs 14, 16 and 18 above took place in interstate commerce.

38. The manufacture, distribution and/or sale by defendants of unauthorized molds in the likenesses of the "PEANUTS" characters is likely to dilute the distinctive quality of plaintiff's proprietary rights in the names and likenesses of said characters and the good will related thereto.

39. The conduct of defendants in manufacturing, distributing and/or selling unauthorized molds in the likenesses of the copyrighted "PEANUTS" characters is likely to confuse, mislead and deceive customers of defendants and members of the public in general as to the origin of those molds.

40. Gretsky was aware in late 1980 or early 1981 that molds in the likenesses of the "PEANUTS" characters were being offered for sale and sold by Sunrise.

41. The molds referred to in paragraphs 14, 16 and 18 above are "goods" as that term is used in section 43(a) of the Lanham Act.

42. As a result of the parties inability to settle this case, plaintiff was forced to prosecute it to trial and incurred substantial attorneys' fees.

43. Plaintiff is entitled to an award of attorneys' fees and costs incurred in its prosecution of this action.

44. In accordance with Title 17, U.S.C. § 504(c) plaintiff has elected to receive, and is entitled to receive, an award of statutory damages, instead of actual damages and profits, for defendants' infringement of plaintiff's copyrights.

45. An award of statutory damages to plaintiff would serve to compensate plaintiff for its damage and injury by virtue of defendants' infringing conduct and would act as a deterrent to the defendants and others from future acts of infringement of plaintiff's rights.

46. Defendants' conduct in infringing the copyrights of plaintiff has caused and will continue to cause irreparable harm to plaintiff unless enjoined.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over each count of the Complaint and over each of the defendants named therein.

2. Plaintiff's claims against defendants are for violation of the Federal Copyright Act, Title 17, U.S.C. §§ 101 *et seq.,* the Lanham Trademark Act, Title 15, U.S.C. § 1125(a), the Florida Deceptive and Unfair Trade Practices Act, Fla.Stat. § 501.201 *et seq.,* the Injury to Business Reputation and Dilution of Trademark Law, Fla.Stat. § 495.151 and the common law of the State of Florida.

3. Plaintiff is the owner of all right, title and interest in and to the "PEANUTS" comic strip and the characters featured therein. Plaintiff likewise is the owner of all copyrights in the "PEANUTS" comic strip and characters featured therein by virtue of ownership of copyrights in United Feature Comics which contain as component parts thereof the "PEANUTS" comic strip and the characters appearing therein. *See* Title 17, U.S.C. § 410(c); *American International Pictures, Inc. v. Foreman,* 576 F.2d 661 (5th Cir.1978).

4. An individual character featured in a comic strip is a separate copyrightable component of the comic strip. *Walt Disney Productions v. Air Pirates,* 581 F.2d 751 (9th Cir.1978), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979); *King Features Syndicate v. Fleischer,* 299 F. 533 (2d Cir.1924).

5. By virtue of plaintiff's copyrights and registrations, plaintiff has obtained the exclusive right to the reproduction, distribution and sale of the "PEANUTS" comic strip and the characters featured therein. Title 17, U.S.C. § 106.

6. Defendants infringed plaintiff's rights in the "PEANUTS" comic strip and the comic strip characters "Snoopy," "Snoopy" in his pose as "World War I Flying Ace," "Woodstock," "Charlie Brown," "Lucy," "Linus," "Pig Pen," and "Sally" through their manufacture, distribution and/or sale of ten plaster molds in the likeness of said "PEANUTS" characters, which molds were not authorized by plaintiff. Title 17, U.S.C. §§ 106, 501.

7. Defendants are not "innocent" infringers as that term is defined in Title 17, U.S.C. § 504(c).

8. Defendants' sale of molds in the likenesses of the "PEANUTS" characters, which they knew to be unauthorized and illegal at the time such sales were made, constitutes a willful infringement of plaintiff's copyrights as that term is used in Title 17, U.S.C. § 504(c)(2).

9. Defendants' sale of the "Fred" mold after receiving notice from plaintiff's counsel that said mold was unauthorized and illegal is also a willful infringement of plaintiff's copyrights as that term is used in Title 17, U.S.C. § 504(c)(2).

10. The plaintiff properly elected to receive, and is entitled to receive, statutory damages instead of actual damages and profits, the election having been made before final judgment. Title 17, U.S.C. § 504(c)(1).

11. In determining the amount of statutory damages to award plaintiff, the Court must award an amount which it considers just. This amount may not be less than $250 or more than $10,000 for each infringement established by plaintiff, which amount may be increased to $50,000 per infringement for each willful infringement of plaintiff's copyrights. Title 17, U.S.C. § 504(c).

12. Knowledge of the officers, directors, employees and agents of the corporation is imputed to the corporation itself. *See General Dynamics Corp. v. Selb Manu-*

facturing Co., 481 F.2d 1204, 1210–11 (8th Cir.1973).

■ 13. Defendant John Gretsky caused and materially contributed to the infringements of plaintiff's copyrights and is, therefore, severally liable to plaintiff, together with defendant Sunrise Mold Co., Inc., for said infringements. *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir.1971).

■ 14. In determining an amount which the Court considers just, the Court is guided by the purposes of the Federal Copyright Act, including the restitution of wrongfully acquired gains to prevent unjust enrichment of the defendant, reparation for injury done to plaintiff, and the deterrence of further wrongful conduct by the defendant and others. *F.W. Woolworth Co. v. Contemporary Acts, Inc.,* 344 U.S. 228, 233, 73 S.Ct. 222, 225, 97 L.Ed. 276 (1952); *Lottie Joplin Thomas Trust v. Crown Publishers,* 592 F.2d 651, 657 (2d Cir.1978).

■ 15. The plaster molds manufactured, distributed and/or sold by defendants as pictured in trial exhibits 3 through 12 constitute eleven separate infringements of the "PEANUTS" comic strip and the characters featured therein.

16. In order to fulfill these purposes of the Copyright Act, plaintiff is entitled to a statutory damage award in this case of $275,000.00, which amount the Court in its discretion considers just. See Title 17, U.S.C. § 504(c); *F.W. Woolworth Co. v. Contemporary Arts, Inc.* 344 U.S. 228, 233, 73 S.Ct. 222, 225, 97 L.Ed. 276 (1952).

■ 17. Defendants' activities constitute an unfair method of competition, unfair trade practice and deceptive practice in violation of section 43(a) of the Lanham Act, section 501.204 of the Florida Deceptive Trade Practices and Injury to Business Reputation statutes and the Florida common law of unfair competition.

■ 18. Defendants' violation of the Florida common law of unfair competition entitles plaintiff to an award of punitive damages. *Miami Beach Lerner Shops, Inc.*

v. *Walco Manufacturing of Florida, Inc.,* 106 So.2d 233, 236 (Fla. 3d D.C.A.1958). Accordingly, the Court awards plaintiff $165,000.00 as punitive damages.[1]

■ 19. Violation of the Florida Deceptive Trade Practices Act, Fla.Stat. §§ 501.201 *et seq.,* may be enjoined, § 501.-221, and attorneys' fees and costs may be granted to the prevailing party, § 501.210.

20. Title 17, U.S.C. § 505 allows for an award of costs and reasonable attorneys' fees in an action for violation of the Copyright Act.

21. The Court in its discretion allows the recovery of costs against the defendant in the amount of $3,573.63. The Court also awards plaintiff reasonable attorneys' fees in the amount of $28,992.00[2] for its prosecution of this action. Title 17, U.S.C. § 505. The total judgment awarded to plaintiff is therefore $307,565.63. In awarding attorneys' fees, the Court has considered, *inter alia,* the value of the case itself, and its value in the context of plaintiff's infringement problems in the plaster industry throughout the United States; the result achieved; the time and labor required; the sophistication of plaintiff's attorneys in the field of copyright law; the novelty and difficulty of the issues; the customary fee; the conduct of the defendant prior to and during the litigation; and the purposes of the Copyright Act. *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974). *See also Goldman-Morgen, Inc. v. Dan Brechner & Co.,* 411 F.Supp. 382 (S.D.N.Y.1976).

■ 22. Title 17, U.S.C. § 502 authorizes the issuance of injunctive relief to prevent or restrain infringement of a copyright.

23. Title 15, U.S.C. §§ 1116 and 1125(a) authorize the issuance of injunctive relief for activities likely to create confusion among the public as to the origin or source of the plaster molds.

---

1. This is the punitive damage portion of award stated in paragraph 16 above.

2. Defendants stipulated to the amount of reasonable attorneys' fees at trial.

24. An injunction may issue for violation of Fla.Stat. § 495.151, Injury to Business Reputation and Dilution of Trademark, § 495.151.

25. By virtue of plaintiff having established ownership of the copyrights in question and infringement of those copyrights by defendants, which raises a presumption of irreparable harm to plaintiff, the great value of these copyrights and the substantial and significant problems experienced by plaintiff in the infringement of these rights by others, there is a likelihood that plaintiff will suffer irreparable harm if the defendants are not enjoined from future infringing activities. *Walt Disney Productions v. Air Pirates,* 345 F.Supp. 108 (N.D.Cal.1972), *cert. denied,* 439 U.S. 1132, 99 S.Ct. 1054, 59 L.Ed.2d 94 (1979); *Miller Brewing Co. v. Carling O'Keefe Breweries, Ltd.,* 452 F.Supp. 429, 437 (W.D.N.Y.1978); *Pantone, Inc. v. A.I. Friedman, Inc.,* 294 F.Supp. 545 (S.D.N.Y.1968).

26. As a result, the following injunction shall and does issue against defendants:

Defendants and their agents, servants, employees, and representatives, and all other persons, firms, or corporations in active concert or participation with said defendants, are hereby permanently enjoined:

(a) from directly or indirectly infringing the above described copyrights of plaintiff in any manner and from engaging in unfair trade practices and unfair competition in any manner with plaintiff by means of any activities, including, but not limited to, manufacturing, selling, offering for sale or disposing of or causing to be manufactured, sold, offered for sale or disposed of (i) plaster molds or other unauthorized products which picture, reproduce or utilize the likenesses of the "PEANUTS" characters including "Snoopy," "Snoopy" in his pose as "World War I Flying Ace," "Woodstock," "Charlie Brown," "Lucy," "Linus," "Pig Pen" and "Sally" as pictured in trial exhibits 3 through 12 or which copy or bear a substantial similarity to any of the "PEANUTS" characters; and (ii) any unauthorized advertising or promotional materials, labels, packaging or containers or other unauthorized products which picture, reproduce or utilize the likenesses of said "PEANUTS" characters or of any other "PEANUTS" characters or any representation which copies or bears a substantial similarity to or is confusingly similar to one or more of the likenesses of one or more of said characters; and

(b) from engaging in any conduct that tends falsely to represent that, or is likely to confuse, mislead, or deceive purchasers, defendants' customers, or members of the public that said plaster molds or other unauthorized items sold by defendants originate from plaintiff, or that said plaster molds or other unauthorized items or defendants have been sponsored, approved, or licensed by plaintiff or are in some way connected or affiliated with plaintiff or the "PEANUTS" comic strip.