**SOUTHERN BELL TELEPHONE AND TELEGRAPH COMPANY, Plaintiff-Appellee,**

v.

**ASSOCIATED TELEPHONE DIRECTORY PUBLISHERS; C.A. Lewis, individually, Maurice Lewis, individually, and R.L. Cunningham, individually and d/b/a A.T.D. Georgia, Defendants-Appellants.**

No. 83–8561.

United States Court of Appeals, Eleventh Circuit.

March 29, 1985.

Audrey Biloon, Macon, Ga., for defendants-appellants.

Jerre B. Swann, Atlanta, Ga., for plaintiff-appellee.

Before JOHNSON and HATCHETT, Circuit Judges, and LYNNE *, District Judge.

HATCHETT, Circuit Judge:

This appeal arises from claims of copyright infringement and unfair competition

---

* Honorable Seybourn H. Lynne, U.S. District Judge for the Northern District of Alabama, sitting by designation.

involving the solicitation for and compilation of telephone directories. We affirm the district court's ruling that copyright violations occurred in this case.

Southern Bell Telephone and Telegraph Company (Southern Bell) is a publisher and distributor of telephone directories for its customers in Florida, Georgia, North Carolina, and South Carolina. In Georgia, Southern Bell produces eighty-five telephone directories grouped by communities with separate telephone exchanges. For many years Southern Bell has published and distributed in the metropolitan Atlanta area a classified telephone directory known as the "Atlanta Yellow Pages." It is called the "Yellow Pages," displays the walking fingers logotype, and is printed on yellow paper.

Associated Telephone Directory Publishers, Inc. (ATD–TX) is a Texas corporation whose principal business is the publication of telephone directories in Texas. Maurice Lewis is president of ATD–TX. In 1981, ATD–TX developed plans to publish "Mid-Georgia West Suburban Yellow Page Buyers Guide," a telephone directory, to cover an area south of Atlanta, Georgia. ATD–TX contracted with C.A. Lewis, a former employee and operator of a mailing service, to conduct a mail solicitation of potential advertisers in the new market area. Lewis conducted the mail solicitation in May, 1982, directing it at approximately 33,000 businesses selected from the 1981–82 Atlanta Yellow Pages. ATD–TX also conducted an on-site solicitation. The solicitations terminated in mid-June due to entry of a temporary restraining order.

On May 15, 1982, Richard Cunningham, a former employee of ATD–TX, executed an agreement with ATD–TX which gave Cunningham the "publishing rights" to four middle-Georgia directories. The planned Mid-Georgia West directory was one of the four. The agreement also gave Cunningham all "present accounts receivable after June 15, 1982," and the right to use the name "A.T.D.–Georgia." (ATD–Georgia and ATDP, the same entity, will be referred to in this opinion as ATD.) In considering how the mail solicitation was conducted, the district court found that

> [t]his solicitation was done by C.A. Lewis, who, in the preparation of the solicitation, photocopied certain pages of the Southern Bell Yellow Pages directory. The listings and advertisements were then cut apart and attached to ATDP solicitation forms. The headings under which the listings appeared in the Southern Bell directory were inserted on the form as the classifications under which the solicited listing would appear in the ATDP directory. Defendants' solicitation forms are printed on yellow paper and display the 'walking fingers' logotype used by Southern Bell. The term 'Yellow Pages' appears several times on the form which states that 'because of the gas situation, this will be our only contact with you concerning the yellow page solicitation for the area mapped below.' A map of a section of Georgia, including Atlanta and Macon, is printed at the bottom of the form with a section west of Macon highlighted in a contrasting coloration. There also appears in red type on the form a statement which reads: 'Your ad, as it appears below, will be published, with your approval, in the next edition of the Mid-Georgia West Suburban Yellow Pages Buyers Guide and distributed in the area in the map to more than 131,000 buyers.' The words 'Southern Bell' and 'telephone company' are not used.

See Appendix A.

The on-site solicitation form is printed on white paper, prominently displaying both the ATD logo and the walking fingers logotype. Further, just above the line for the signature of the advertiser, is a disclaimer in bold, capital letters, "WE ARE NOT THE TELEPHONE COMPANY."

On June 14, 1982, Southern Bell filed its complaint alleging six violations of federal and state fair business practice statutes. Count I alleges copyright infringement under the Copyrights Act, 17 U.S.C.A.

§§ 101–702 (1977, Supp.1984).[1] In this count, Southern Bell asserts exclusive copyright interest in the 1981–82 Atlanta Yellow Pages "to publish and reproduce the said work, to prepare derivative works from it, and to publicly display the said work including the individual listings, advertisements, and art work therefrom." The 1981–82 Atlanta Yellow Pages was registered with the United States Register of Copyrights on June 8, 1982. Southern Bell claims injury to its ownership rights as a result of ATD's "preparing, reproducing, distributing, publishing, and placing upon the market without authorization, sales solicitation materials containing subject matter which was copied identically and directly from plaintiff's said copyrighted December 1981–82 Atlanta Yellow Pages."

1. Title 17 U.S.C.A. § 501 provides in pertinent part:
 § 501. Infringement of copyright
 (a) Anyone who violates any of the exclusive rights of the copyright owner ... is an infringer of the copyright.
 (b) The legal or beneficial owner of an exclusive right under a copyright is entitled ... to institute an action for any infringement of that particular right committed while he or she is the owner of it.

2. Title 15 U.S.C.A. § 1125(a) provides:
 (a) Any person who shall affix, apply, or annex, or use in connection with any goods or services, or any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols tending falsely to describe or represent the same, and shall cause such goods or services to enter into commerce, and any person who shall with knowledge of the falsity of such designation of origin or description or representation cause or procure the same to be transported or used in commerce or deliver the same to any carrier to be transported or used, shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin or in the region in which said locality is situated, or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

3. Title 10 Ga.Code Ann. § 1–372 provides:
 10–1–372. When trade practices are deceptive; common-law and other remedies unaffected.

Count II alleges federal unfair competition in violation of 15 U.S.C.A. § 1125(a) (1982).[2] Southern Bell claims that ATD's use of the walking fingers logotype, the names "Mid-Georgia West Suburban Yellow Page Buyers Guide" and "Yellow Page Buyers Guide," and the duplication of listings and other materials from its Atlanta Yellow Pages causes confusion. Southern Bell also claims that printed statements which imply an association between Southern Bell and ATD are "calculated to cause confusion or mistake among yellow pages users and advertisers as to the true origin, source, sponsorship, or affiliation" of ATD and the Mid-West Georgia Buyers Guide.

Count III alleges common law and statutory unfair competition in violation of the Georgia Uniform Deceptive Trade Practices Act, Ga.Code § 10–1–372 (1982).[3]

(a) A person engages in a deceptive trade practice when, in the course of his business, vocation, or occupation, he:
(1) Passes off goods or services as those of another;
(2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;
(3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with or certification by another;
(4) Uses deceptive representations or designations of geographic origin in connection with goods or services;
(5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;
(6) Represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;
(7) Represents that goods or services are of a particular standard, quality, or grade or that goods are of a particular style or model, if they are of another;
(8) Disparages the goods, services, or business of another by false or misleading representation of fact;
(9) Advertises goods or services with intent not to sell them as advertised;
(10) Advertises goods or services with intent not to supply reasonable expectable public demand, unless the advertisement discloses a limitation of quantity;
(11) Makes false or misleading statements of fact concerning the reasons for, existence of, or amounts of price reductions; or

Southern Bell claims injury to its goodwill and reputation as a result of ATD's solicitations which had the "calculated purpose of trading upon plaintiff's goodwill and business reputation and of deceiving plaintiff's subscribers." [4]

On June 15, 1982, the district court granted Southern Bell a temporary restraining order against ATD's continuance of the mail and on-site solicitations. On December 29, 1982, the court entered a preliminary injunction. Southern Bell sought a permanent injunction, actual and statutory damages under the Copyright Act, punitive damages, an accounting for defendants' profits, and attorney's fees and costs. At time of trial, the claims before the district court were the permanent injunction claim and a demand for attorney's fees and costs under 17 U.S.C.A. § 505 (1977),[5] 15 U.S.C.A. § 1117 (1982),[6] and Ga. Code § 10-1-373(b) (1982).[7]

In a nonjury trial held March 22, 1983, Edmond E. Gay, a customer service representative for Southern Bell, testified that for several weeks in May and June, 1982, he handled a volume of telephone complaints about confusion resulting from the ATD mail solicitations. The complaints were substantially greater in number than any other group of complaints regarding other non-Southern Bell directories. Maurice Lewis, president of ATD–TX, testified that there had been confusion in the past with other ATD directory solicitations, and it was expected that confusion would be a result of the Atlanta mail solicitation. C.A. Lewis acknowledged that he had received complaints of confusion as a result of the Atlanta mailing. Seven witnesses testified for Southern Bell on their actual confusion as a result of ATD's mail solicitation. The district court found that

[t]he evidence is unrefuted that defendants were aware that Southern Bell's Yellow Pages December 1981–82 Atlanta directory were copyrighted. By their own admission they were aware of confusion caused by prior solicitations and anticipated that the Atlanta mailing would result in some confusion unless it were made clear to those being solicited by appropriate disclaimer that they were not connected with the Southern Bell Yellow Pages directory. In addition, after re-

---

(12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

(b) In order to prevail in an action under this part, a complainant need not prove competition between the parties or actual confusion or misunderstanding.

4. Southern Bell pleaded three other counts: Count IV alleged false advertising in violation of Ga.Code Ann. § 10-1-421 (1982); Count V claimed unfair business practices in violation of Ga.Code § 10-1-399 (1982); and Count VI claimed unfair competition under common law and under Ga.Code § 23-2-55 (1982). As to these counts, the district court found that they "have either been withdrawn or rendered unnecessary by virtue of findings and conclusions respecting other counts." ATD does not appeal the decision of the district court not to rule on these counts.

5. Title 17 U.S.C.A. § 505 provides:
§ 505. Remedies for infringement: costs and attorney's fees.
In any civil action under this title, the court in its discretion may allow the recovery of full costs by or against any party other than the United States or an officer thereof. Except as otherwise provided by this title, the court may also award a reasonable attorney's fee to the prevailing party as part of the costs.

6. Title 15 U.S.C.A. § 1117 provides:
§ 1117. Recovery for violation of rights, profits, damages and costs; attorney fees
When a violation of any right of the registrant of a mark registered in the Patent and Trademark Office shall have been established in any civil action arising under this chapter, the plaintiff shall be entitled ... (3) the costs of the action.... The court in exceptional cases may award reasonable attorney fees to the prevailing party.

7. Ga.Code Ann. § 10-1-373(b) provides:
10-1-373. Enjoining deceptive trade practices; costs and attorney's fees; relief cumulative.
(b) Costs shall be allowed to the prevailing party unless the court otherwise directs. The court, in its discretion, may award attorney's fees to the prevailing party if:
(1) The party complaining of a deceptive trade practice has brought an action which he knew to be groundless; or
(2) The party charged with a deceptive trade practice has willfully engaged in the trade practice knowing it to be deceptive.

ceiving notices of confusion directly from customers solicited and the complaints of Southern Bell, they refused to discontinue the mail solicitations.

Defendants have used a disclaimer of association on their white on-premise call forms for the avowed purpose of avoiding confusion. They admit that there would be no additional expense involved in adding such disclaimer information to the mail solicitations and, in light of their admitted prior knowledge of confusion and the kind of confusion that might be generated due to the very nature of the solicitations, the omission of such clarifying information, together with ambiguous verbiage such as 'Your ad as it appears below will be published' and 'Because of the gas situation this will be our only contact with you concerning the yellow pages solicitation' is evidence of a clear and willful intent to confuse and deceive the public being solicited. The use of yellow paper, the walking fingers logotype, repetitive use of the term 'Yellow Pages', and the copy of the addressee's Southern Bell Yellow Pages listing as previously published by the Southern Bell Yellow Pages directory further evidences an intent to trade on the public's association of those identifying elements with Southern Bell.

The district court found that Southern Bell's copyright had been infringed and that ATD had engaged in unfair competition and deceptive trade practices. In fashioning relief, the district court awarded attorney's fees to Southern Bell, but denied Southern Bell's request that notice be given individuals who were solicited and purchased listings in ATD's directory. The district court determined that individuals who were actually confused and who paid ATD could seek relief in separate actions. As to further injunctive relief, the court ruled that Southern Bell is *"entitled to an injunction against the further infringement of its copyright and further unfair competition on the part of defendants [ATD]. The preliminary injunction entered by this court on December 29, 1982, is now made permanent as is set out below.* [Emphasis added.]"[8] The district court's permanent injunction, in pertinent part, provided:

1. Defendants and their affiliates in allied and subsidiary companies, their officers, agents, servants, employees and all persons acting in conjunction or participation with them are hereby PERMANENTLY RESTRAINED AND ENJOINED from:

(a) Publishing or causing to be published any printed or audiovisual advertisements, solicitations, promotional or other written material, or commercial telephone directories which do not adequately identify defendants as the source of defendants' commercial telephone directories by displaying defendants' corporate name or other trade name which is not confusingly similar to any of plaintiff's names, marks or other identifications, at least as prominently and in letters or print at least as large and as bold as and immediately adjacent to any use of the words 'yellow pages' or the 'walking fingers' logotype;

(b) Using any solicitation form directed to recipients in the states of North Carolina, South Carolina, Georgia or Florida which does not include in promi-

---

**8.** The December 29, 1982, preliminary injunction provided:

That ATD cease: (a) cease publishing materials using the walking fingers logotype, the term yellow pages and any other material from Southern Bell's directories which does not identify Southern Bell as the source of the material; (b) using any solicitation form in North Carolina, South Carolina, Georgia, or Florida which does not include just above the signature line the disclaimer 'We are an independent directory publisher not affiliated

with any telephone company.'; (c) copying listings or advertisements from Southern Bell's directories; (d) making oral or written statements which does not identify ATD as the source of ATD's commercial telephone directories; (e) engaging in any other conduct which is likely to cause confusion, mistake, or misunderstanding as to the source or affiliation of ATD's commercial telephone directories with Southern Bell's yellow pages; and (4) ATD is to cause each of its employees to read this order.

nent typeface, immediately above the signature line for the advertising purchaser the words:

'We are an independent telephone directory publisher not affiliated with any telephone company.'

*(c) Using photocopies of listings or advertisements from plaintiff's directories as part of defendants' directories or solicitations or otherwise engaging in any unlicensed use of plaintiff's copyrighted directories in violation of plaintiff's copyrights;*

(d) Making any oral or written statements or presentations which do not adequately identify defendants as the source of the defendants' commercial telephone directories;

(e) Engaging in any other conduct which constitutes copyright infringement or which is likely to cause confusion, mistake or misunderstanding as to the source, affiliation, connection or association of defendants' commercial telephone directories with Southern Bell's Yellow Pages directories. [Emphasis added.]

The court awarded Southern Bell $44,000 in attorney's fees.

ATD raises four issues on appeal: (1) Whether ATD infringed Southern Bell's copyright to the Atlanta 1981–1982 Yellow Pages; (2) whether the permanent injunction is overly broad; (3) whether Richard Cunningham and ATD should be liable for attorney's fees; and (4) whether the attorney's fee award is excessive and unreasonable.

## DISCUSSION

1. Copyright Infringement.

The district court held that Southern Bell:

proved all of the elements of its claim of copyright infringement in that it has established that it is the owner of a valid copyright registration, it has published the statutory notice of copyright on the work in question, and defendants [ATD] have, in effect, admitted that they have copied plaintiff's work.

ATD contends that "Southern Bell's use of the term 'yellow pages' and the walking fingers' symbol stemmed from ... the National Yellow Pages Service Association (NYPSA) to which ATD–TX also belongs, that NYPSA owns the symbols, and that all members of NYPSA are authorized to use the symbols." Southern Bell has not claimed exclusive ownership of either the term "yellow pages," the right to use yellow paper, or the walking fingers' logotype. "In fact, they have been dedicated to the public domain and are, therefore, not the property of anyone." Nonetheless, Southern Bell contends that the use of these identifying elements has caused the public to associate these elements with Southern Bell.

In the view of ATD, the district court erroneously held that the holder of a copyright for a "collective work" has a copyright interest in the preexisting materials, which are themselves original works of authorship capable of receiving individual copyright protection. A copyright in a collective work, therefore, does not necessarily render protectible the component parts of the collective work, in this case, the advertisements and listings. Further, as a collective work, sufficient copyright notice requires that each individual "work" display a notice of copyright. ATD argues that if the infringing act is the copying of pages of Southern Bell's directory, then C.A. Lewis, as an independent contractor and as the only person who copied the Atlanta Yellow Pages, would be the only person liable; this action, however, was brought to halt the Atlanta mailings. ATD asserts: "Those mailings did not have full pages or even portions of pages on them." ATD concludes: Since the district court ruled that the copying of pages was the infringement, then the ruling is clearly erroneous.

Southern Bell argues that the district court ruled that ATD's photocopying of entire sections of the Atlanta Yellow Pages and then cutting out individual listings and advertisements from those pages constituted copyright infringement. In Southern

Bell's view, the Atlanta Yellow Pages, as a directory, is a "compilation" provided copyright protection under 17 U.S.C.A. § 103. Such protection of the entire work, the compilation, they argue, is not "dependent on ownership by the creator of the underlying material comprising the work." Southern Bell argues further that even if it has no right to prevent the use of individual ads cut from pages in its directory, ATD, as a "second comer cannot under any circumstances use a predecessor's [Southern Bell's] work as a shortcut to avoid a separate canvass" of the market to identify potential advertisers. They conclude that Maurice Lewis and R.L. Cunningham, as the owners of "the enterprise which employed C.A. Lewis's services, had both a financial interest in the infringing activity and the right to supervise his activities," and, "therefore, [are] liable even if they had not actual knowledge of the infringement."

 Directories can receive copyright protection as "literary works" under 17 U.S.C.A. § 101 (1977). *See* H.R.Rep. No. 1476, 94th Cong., 2d Sess. 54, *reprinted in* 5 U.S.Code Cong. & Ad.News 5659, 5667 (1976). Directories are also included within the definition of a "compilation." 17 U.S. C.A. § 103(a) (1977).

> A compilation is a work that is 'formed by the collection and assembly of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship.' The term 'compilation' includes 'collective works,' which are defined as work, such as periodicals, anthologies, or encyclopedias,' in which a number of contributions, consisting of separate and independent works in themselves, are assembled into a collective whole.

17 U.S.C.A. § 101, *quoted in* Boorstyn, *Copyright Law*, § 2:19 at 57 (1981) (footnotes omitted). *See 1 Nimmer on Copy-*

*right*, § 2.04[B] at 2–41 (1984). Independent works brought together into a "collective work" are copyrightable. 17 U.S.C.A. § 101. The ability to copyright a compilation does not depend on whether the individual items compiled are themselves capable of being separately copyrighted; rather, a compilation is capable of being copyrighted even where it merely consists of

> a selection or arrangement of 'facts' which individually would not be copyrightable [but] the originality involved in the selection and/or arrangement of such facts is sufficient to constitute the resulting compilation of a protectible literary work. Although some may question whether catalogs, directories and the like should be regarded as works of authorship subject to copyright protection, such protection has long been recognized.

*1 Nimmer*, § 2.04[B] 2–41 to 2–42 n. 16 (footnotes omitted).

 A telephone directory or any other compilation satisfies the "original work of authorship" requirement of section 102 where the directory is the product of subjective "selection, organization, and arrangement of the preexisting materials." Boorstyn, § 2:19 at 59. *See Miller v. Universal City Studios, Inc.*, 650 F.2d 1365, 1369 (5th Cir.1981). The former Fifth Circuit in *Miller* discounted the substantial line of cases beginning with *Jeweler's Circular Publishing Co. v. Keystone Publishing Co.*, 281 F. 83 (2d Cir.1922). *Jeweler's Circular* held that originality exists where the compilation "results from the *industrious collection*, judgment, and labor required to select, organize, and arrange it." Boorstyn, § 2–19 at 60. In so holding, it agreed with *1 Nimmer*, § 3.04 that "industriousness of the efforts to develop the information" is not relevant to a determination of originality under the copyright statute. *Miller*, 650 F.2d at 1369; *1 Nimmer*, § 3.04 at 3–19.[9]

**9.** At issue here is whether the principle characterized as the "sweat of the brow" theory is to apply in a determination of originality under the Act.

> The right to copyright a book upon which one has expended labor in its preparation does not depend upon whether the materials which he has collected consist or not of matters which are *publici juris*, or whether such mate-

Classification of a work as a compilation, a collective work, or a derivative work does not resolve the issue of whether the work is capable of being copyrighted or whether the copyright has been infringed. These classifications serve mainly to identify the scope of the protection afforded to the work and the parties who have an interest in the work protected by the copyright laws. A telephone directory compilation, for example, which includes preexisting materials which themselves are capable of being copyrighted, protects the copyright interest of the author of the preexisting material and the copyright interest of the author of the compilation. On the other hand, a telephone directory compilation whose components are comprised exclusively of information in the public domain can be protected by the copyright laws only as to the selection and arrangement of the compilation, the work as a whole, and not as to the preexisting information. It is unavailing, therefore, for ATD to argue that its view of the 1981–82 Atlanta Yellow Pages as a "collective work" should serve as the framework of inquiry. A collective work is itself a compilation. Where, as here, it is the publisher of the compilation who claims a copyright injury to its selection and arrangement of preexisting material, as a whole, and not the authors of the preexisting material, it is irrelevant whether the preexisting materials are themselves capable of being copyrighted.

To prevail on a claim of copyright infringement, a plaintiff must establish ownership of a valid copyright in the work and copying by the defendant. *Original Appalachian Artworks, Inc. v. Toy Loft, Inc.*, 684 F.2d 821 (11th Cir.1982); *Miller v. Universal City Studios, Inc.*, 650 F.2d 1365 (11th Cir.1981). Further, the "mere use of the information contained in a directory without a substantial copying of the format does not constitute infringement. *See, e.g., New York Times Co. v. Roxbury Interface, Inc.*, 434 F.Supp. 217 (D.N.J.1977)." *Miller*, 650 F.2d at 1370. "When, however, there is substantial copying, 'the question of fair or unfair use arises.' " *National Business Lists v. Dun and Bradstreet, Inc.*, 552 F.Supp. 89, 96 (N.D.Ill.1982).

The fair use defense is established by 17 U.S.C.A. § 107 which provides the relevant factors to be used in determining whether such a defense is justified. These factors are: (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes; (2) the nature of the copyrighted work; (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and (4) the effect of the use upon the potential market for or value of the copyrighted work. While the opportunity to use the fair use defense for copying research is broad, the opportunity to use that defense

---

rials show literary skill or originality, either in thought or in language, or anything more than industrious collection. *The man who goes through the streets of a town and puts down the names of each of the inhabitants, with their occupations and their street number, acquires material of which he is the author. He produces by his labor a meritorious composition, in which he may obtain a copyright, and thus obtain the exclusive right of multiplying copies of his work.* *Jewelers Circular Publishing Co. v. Keystone Publishing Co.*, 281 F. 83, 88 (2d Cir.1922), *cited in Leon v. Pacific Telephone & Telegraph Co.*, 91 F.2d 484 (9th Cir.1937) (emphasis added). *See also* the line of cases cited in *1 Nimmer*, § 3.04 n. 11.

In the past, some courts had, in effect, protected public domain material against copying by requiring the second compiler of such ma-

terial to do his own independent research and expend his own labor and effort. This prohibition against reaping the fruits of another's labor did not extend to forbidding the use of the prior work for purposes of verification or for clues to common source material, provided, however, the source material was then independently compiled.
Boorstyn, § 2:19 at 61 (footnotes omitted).

Our inquiry here does not require that we choose between a limited or more expansive standard of originality under the Act. It is enough that originality is to be tested by the nature of the selection and arrangement of the preexisting material in the compilation. Nonetheless, we are in agreement with the *Miller* panel and Nimmer that protection of original research of information in the public domain is better afforded under an unfair competition theory. *See 1 Nimmer*, § 3.04 at 3–19.

is narrow once the research is selected and arranged into a compilation and is copied. *National Business Lists v. Dun and Bradstreet, Inc.*, 552 F.Supp. 89, 96 (N.D. Ill.1982); *Northwestern Bell Telephone Co. v. Bedco of Minnesota, Inc.*, 501 F.Supp. 299, 303 (D.Minn.1980); *New York Times Co. v. Roxbury Data Interface, Inc.*, 434 F.Supp. 217, 222 (D.N.J.1977). *See also Universal City Studios v. Sony Corp. of America*, 659 F.2d 963, 970–71 (9th Cir.1981).

■ We agree with the district court that Southern Bell proved that ATD infringed the copyright of Southern Bell's compilation of the 1981–82 Atlanta Yellow Pages. First, Southern Bell proved it owned a valid copyright to the compilation. It offered as prima facie evidence of ownership of valid copyright its copyright registration certificate for the compilation. ATD did not rebut the appropriate inference of validity. *See Ferguson v. National Broadcasting Co.*, 584 F.2d 111 (5th Cir.1978); *3 Nimmer on Copyright*, § 13.-01 (1980). Second, Southern Bell proved that ATD copied pages of its compilation. "Since there is often no direct evidence of copying, it is ordinarily established by proving access to the copyrighted material and substantial similarity between the two works." While ATD did admit that it was aware of potential confusion as a result of the form of its mail solicitation, the district court did not find that it expressly admitted that it copied Southern Bell's compilation. Nonetheless, the renderings of the arranged artwork and listings as well as category headings are "substantially similar" to those found in Southern Bell's compilation. The district court's finding that ATD copied Southern Bell's compilation, therefore, is not clearly erroneous. Accordingly, we affirm the district court's holding that ATD infringed Southern Bell's copyright.

■ ATD argues further that if Southern Bell's copyright was infringed, only C.A. Lewis should be held liable, "because he alone actually performed the photocopying and supervised the preparation and mailing of defendants' solicitation as an independent contractor." "An individual, including a corporate officer, who has the ability to supervise infringing activity and has a financial interest in that activity, or who personally participates in that activity is personally liable for the infringement." *Lauratex Textile Corp. v. Allton Knitting Mills, Inc.*, 517 F.Supp. 900, 904 (S.D.N.Y. 1981). *See United Feature Syndicate, Inc. v. Sunrise Mold, Inc.*, 569 F.Supp. 1475 (S.D.Fla.1983); *Stewart v. Southern Music Distributing Co.*, 503 F.Supp. 258 (M.D.Fla.1980). Maurice Lewis and ATD–TX, and subsequently A.L. Cunningham and ATD, employed the services of C.A. Lewis. They all had a financial interest in the infringing activity and the right to supervise Lewis's activities. Liability falls on all of them even if they were ignorant of the infringement. *Gershwin Publishing Co. v. Columbia Artists Management, Inc.*, 443 F.2d 1159, 1162 (2d Cir.1971); *United Feature Syndicate*, 569 F.Supp. at 1480–81. Additionally, here, all appellants had actual knowledge of the solicitation.

■ ATD argues that Southern Bell did not have a valid copyright as to the advertisements in the 1981–82 Atlanta Yellow Pages because it failed to display a copyright notice on each advertisement. Such a contention might be relevant if Southern Bell had alleged that its copyright as to the *advertisement* was infringed by the ATD mail solicitation. Southern Bell's contention of infringement is that its copyright as to the *compilation* was infringed by the mail solicitation. Copyright notice on a compilation is sufficient when, as here, notice is placed at the bottom of each page as Southern Bell did with its 1981–82 Atlanta Yellow Pages. *See, e.g., Original Appalachian Artworks v. Toy Loft*, 684 F.2d 821, 826–27 (11th Cir.1982).

2. Scope of District Court's Injunction.

■ ATD also contends that the district court's order is overly broad and should be modified. Specifically, ATD asserts that part of the order permanently enjoins ATD from "using photocopies of listings or ad-

vertisements from plaintiff's directories as part of defendants' directories or solicitations." This enjoining language, ATD argues, is overly broad. At oral argument in this appeal, Southern Bell conceded that the district court's order should not be interpreted as prohibiting ATD from going directly to the advertisers and obtaining consent to publish the advertisements which previously appeared in Southern Bell's directory. We agree with ATD that the district court order literally read is overly broad. The order properly read should not be interpreted as a bar to ATD's use of the advertisements where permission is granted by the particular advertisers. The record supports this conclusion. At one point in the record, the district court specifically refers to the narrower interpretation which Southern Bell concedes and we adopt.

Under its discussion of copyright infringement, the district court was careful to distill the quantity of Southern Bell's copyright interest from that of the public or the advertisers:

> The information and design of that information contained in a telephone directory may be in the public domain or the property of the advertiser, but the effort involved in preparing artwork and layout, and in the selection, compilation and arrangement of the information contained therein constitutes a work of authorship subject to copyright protection. [Emphasis added.]

We hold, therefore, that the district court did not enjoin ATD from use of the advertisements which appeared in Southern Bell's 1981–82 Atlanta Yellow Pages, where particular advertisers have given their consent.

3. Scope of Liability for Attorney's Fees.

■■■ ATD also argues that it and Richard Cunningham did not commit any infringing acts; therefore, they should not be held liable for attorney's fees. In ATD's view, Cunningham had the "misfortune" to enter into a contract with ATD–TX to purchase the Georgia directory in May, 1982,

"more than one month after these mailings commenced, and about two weeks before plaintiff notified ATD–TX of its intent to seek legal remedies to halt the Atlanta solicitation." ATD contends that no one mentioned the problem of the Atlanta solicitation to Cunningham before early June when he moved to Macon, Georgia, and organized ATD. It is contended that two weeks after Cunningham's arrival in Georgia, and subsequent to the granting of a temporary restraining order, Maurice Lewis telephoned Cunningham and informed him of the legal response to the Atlanta solicitation. "Effectively, ATD–GA went out of business on June 15, 1982, when the TRO was entered." The district court did not abuse its discretion in finding that Cunningham and ATD were a part of the corporate enterprise which injured Southern Bell's copyright interest.

Cunningham was for many years an employee of ATD–TX with responsibility for hiring and training of ATD's sales force. By the May, 1982, agreement, Cunningham agreed to indemnify ATD–TX as to any litigation connected with the Mid-West Georgia Directory. Further, C.A. Lewis was an agent of ATD–TX and, upon execution of the May, 1982, agreement, was working for the benefit of Cunningham and ATD. *See Mead Johnson and Co. v. Baby's Formula Service, Inc.,* 402 F.2d 19, 23 (5th Cir.1968). Accordingly, the district court did not abuse its discretion in finding Cunningham, ATD, and the other appellants liable for attorney's fees.

4. Award of Attorney's Fees.

■■■ ATD contends that the award of $44,000 in attorney's fees was inflated by at least $11,000 by Southern Bell's motion for partial summary judgment and for an interim award of attorney's fees filed during a hearing on Southern Bell's application for a preliminary injunction. Further, ATD claims that attorney's fees were inflated as a result of the belief that the case would be tried to a jury. "Just prior to trial on the merits, however, plaintiff [Southern Bell] suddenly waived all claim

to any relief that could be granted by a jury." In ATD's view, the trial on the merits involved the same evidence adduced at the preliminary injunction hearing, and Southern Bell received the same relief with the only difference being enhancement of attorney's fees.

The district court recognized that its discretion in granting of attorney's fees is controlled by the former Fifth Circuit decision in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974). The district court assessed the propriety of awarding attorney's fees under the twelve *Johnson* factors and explained its decision:

> Here, the plaintiff has requested an award of $44,000.00 which the court finds is fair and reasonable in light of other awards in similar cases in this and other districts and based upon the court's own knowledge of prevailing hourly rates and charges for this type litigation. According to plaintiff's testimony at trial, the amount awarded excludes time spent researching and briefing the question of whether this action should be tried to the court or to a jury.

Accordingly, we find that the district court neither abused its discretion in application of the *Johnson* factors nor in awarding $44,000 in attorney's fees against ATD.

## CONCLUSION

■ Directory cases have been provided special treatment in the law of copyright. *See Miller v. Universal City Studios*, 650 F.2d 1365, 1369 (5th Cir.1981). Part of the difficulty of divining a bright line of copyright interests in directories is the determination of whether the "selection and arrangement" of factual material in the directory is sufficiently original so as to justify copyright protection, in light of the prevailing principle that facts are not copyrightable. *See 1 Nimmer* at § 3.04. Under prevailing law, as a result of the special treatment of directories in copyright law, ATD's copying of Southern Bell's compilation was infringement. Further, the confusion generated by ATD's design of its Atlanta solicitation made ATD properly liable for both unfair competition and deceptive trade act violations. The district court did not err in application of the law nor in exercising its discretion.

AFFIRMED.

### APPENDIX A

**ASSOCIAT█TELEPHONE DIRECTORY PUBL█ERS, INC.**
P.O. Box 6170
Huntsville, Texas 77340
713/291-7270

- **MAXIMUM USAGE**
- **A COMPLETE YELLOW PAGE BUYERS GUIDE**
- **MAXIMUM DISTRIBUTION**
- **FULL MARKET COVERAGE**

Advertise where YOUR Customers are!
MID-GEORGIA WEST SUBURBAN
YELLOW PAGE BUYERS GUIDE
The ONLY Specific Market Coverage Available
24 Hours a Day, 365 Days A Year, at any Price.

Because of the Gas Situation, this will be our only contact with you concerning the Yellow Page Solicitation for the area mapped below. Your business will be appreciated.

Your ad as it appears below will be published, with your approval, in the next Edition of the **MID-GEORGIA WEST SUBURBAN YELLOW PAGE BUYERS GUIDE** and distributed in the area in the map to more than 131,000 potential buyers.

Your Ad Will Cover This Entire Area
For Only $ 55.00 Per Year

Category: Engineers-Water Supply

814

Please make your check payable to **ASSOCIATED TELEPHONE DIRECTORY PUBLISHERS, INC. OR A.T.D.** A return envelope is enclosed for your convenience. Your ad must be received in our office no later than __5-21-82__, in order to guarantee your space reservation.

ENGINEERING SCIENCE WA. .................. 325-0779

Please indicate below, any changes, additions or corrections you may require.

☐ Ad is correct as shown above. Print as is. My check is enclosed in the amount of _____.

☐ Ad changes required. Please have my ad appear as follows:

Name: _____

Address: _____

Telephone: _____

☐ Please have a representative contact me for more information concerning prices and additional advertising space in the **YELLOW PAGE BUYERS GUIDE.**

Authorized By: _____

Title _____ Date _____ 000019

**EXHIBIT B**