**SOUTHWESTERN BELL TELEPHONE COMPANY, a corporation,
Plaintiff,**

**v.**

**NATIONWIDE INDEPENDENT DIRECTORY SERVICE, INC., a corporation, et al., Defendants.**

**Civ. No. HS 72–C–21.**

United States District Court,
W. D. Arkansas,
Hot Springs Division.

Jan. 4, 1974.

Plaintiff first charges that defendants have copied, in a telephone directory published by defendants, listings and art work from plaintiff's copyrighted telephone directory in violation of the Copyright Act of 1909, 17 U.S.C.A. § 1 et seq. Plaintiff's second cause of action sounds in unfair competition and challenges defendant's use of the phrase "Yellow Pages" and the duplication of plaintiff's claimed Yellow Pages trademark in the directory published by defendants. Damages and injunctive relief are prayed for.

Plaintiff is a Missouri corporation and is authorized to do business as a public utility in Arkansas. It is one of the Bell System operating companies and provides local and long distance service to many communities in Arkansas and in other states. Defendant, Nationwide Independent Directory Service, Inc., is a Texas corporation which has not been authorized to do business in Arkansas. Individual defendants Dan A. Smith and his wife, Marty Smith, are residents of Hot Springs, Garland County, Arkansas. The Smiths are the sole officers, directors, stockholders and employees of Nationwide.

This Court has jurisdiction by virtue of 28 U.S.C.A. § 1338(a) which grants to district courts original and exclusive jurisdiction over civil actions arising under the copyright statute and over any substantial and related claim for unfair competition which has been joined with the statutory claim.

Donald K. King, Ronald T. LeMay, and Herschel H. Friday, Jr., Smith, Williams, Friday, Eldredge & Clark, Little Rock, Ark., for plaintiff.

John T. Harmon, Harmon, Wallace & Hilburn, North Little Rock, Ark., for defendants.

## OPINION

OREN HARRIS, Chief Judge.

This is an action for copyright infringement and unfair competition.

The cause has been tried to the Court and has been submitted upon the proof taken at the hearing on plaintiff's motion for preliminary injunction held June 5, 1973, and the hearing on the merits held November 9, 1973, the pleadings, certain stipulations of counsel, interrogatories, depositions, numerous exhibits and written briefs. This opinion incorporates the Court's findings of fact and conclusions of law as authorized by Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A.

## COPYRIGHT VIOLATION

Plaintiff, as part of its service offering, annually publishes and distributes telephone directories to its customers in its Little Rock telephone exchange, comprised of Little Rock, North Little Rock and certain surrounding suburban areas. These directories have been copyrighted since 1919. The directory which plaintiff claims defendant has copied was published by plaintiff in March 1972 for the use of its customers in the Little Rock exchange for the remainder of 1972 and the first months of 1973.

The first part of the directory is printed on white paper and lists in alphabetical order the names, addresses and telephone numbers of each of plaintiff's customers in the Little Rock exchange. The second part of the directory is printed on yellow paper and lists business customers alphabetically under appropriate business classifications. It also contains classified advertisements of differing sizes purchased by business customers under their business classifications.

The directory is 11 x 9 inches in size and about 1½ inches thick. It contains approximately 1,000 pages. The top half of the directory's front cover displays a picture of the North Little Rock Community Center. The bottom half of the cover bears the title "Little Rock— North Little Rock and suburban areas." In the lower right hand corner of the cover there appears the logo which plaintiff alleges to be its Yellow Pages trade-mark. The logo consists of a square colored black within which there is pictured a telephone receiver over an open book colored yellow. Across the book there is printed the words "Yellow Pages" in black. The lower left corner of the cover shows the Bell System logo, a circle with a bell in the center to the right of which is printed Southwestern Bell. At the bottom of the inside cover is printed "04494 Copyright 1972 by Southwestern Bell Telephone Company." A copyright notice is also printed on every page.

The proof shows the compilation, production and distribution of the 45 directories which plaintiff publishes for the Little Rock exchange and the other 44 exchanges plaintiff operates in Arkansas involves highly specialized work and that great care is taken to assure the accuracy of the listings contained therein. The cost for production and distribution of the 45 directories plaintiff published in Arkansas in 1972 approximated $1,467,000. About 40% of this figure, or $585,000, represented the cost for the "Little Rock—North Little Rock and suburban areas" directory.

We will now describe the telephone directory published by defendants. This directory is 9 x 6 inches in size and ⅜ inches thick. It contains 206 pages. The front cover bears the title "North Little Rock and Suburban Areas Telephone Directory" across the top. Below this is a picture of an Ozark mountain spring. In the lower right hand corner is printed the same Yellow Pages logo which appears on plaintiff's directory. Defendant's directory is also divided into two sections. The alphabetical section, printed on white paper, lists names, addresses and telephone numbers of persons residing in North Little Rock. The classified section, printed on yellow paper, lists North Little Rock businesses under the appropriate business headings. It also contains business advertising. The publisher's name does not appear on the directory cover. However, on page 3 the name "Nationwide Independent Directory Service, Inc." appears as the publisher.

The testimony discloses defendants sold classified advertising in their directory to a number of North Little Rock business firms during the first part of 1972. Defendants received approximately $8,500 in advertising revenues from their directory and expended approximately $7,500 for its compilation, printing and distribution to residents of North Little Rock.

Plaintiff introduced into evidence the copyright certificate of regis-

tration issued by the United States copyright office for its 1972 Little Rock —North Little Rock and suburban areas directory. This certificate names plaintiff as author of the directory and consequently, plaintiff is entitled to a *prima facie* presumption of originality. 17 U.S.C.A. § 209; Drop Dead Co. v. S. C. Johnson & Son, Inc., 326 F.2d 87, 92 (9th Cir. 1963), cert. denied, 377 U.S. 907, 84 S.Ct. 1167, 12 L.Ed.2d 177. Also the certificate of registration constitutes *prima facie* evidence of the validity of plaintiff's copyright and defendants have the burden of overcoming this presumption. Flick Reedy Corp. v. Hydroline Mfg. Co., 351 F.2d 546 (7th Cir. 1965), cert. denied, 383 U.S. 958, 86 S. Ct. 1222, 1223, 16 L.Ed.2d 301.

■ Defendants challenge plaintiff's copyright, taking the position that telephone directories by reason of the public nature of their content cannot be copyrighted. This contention is without merit. The copyright law specifically states that directories may be copyrighted. 17 U.S.C.A. §§ 3, 5 and 7. Moreover, the case law is well settled that telephone directories, as well as other similar compilations, are copyrightable and that suits for copyright infringement will lie when such compilations are copied without consent. 18 Am.Jur.2d Copyright and Literary Properties § 46; 18 C.J.S. Copyright and Literary Property § 29; Nimmer, Nimmer on Copyright § 41 (1973).

The landmark case on copyright infringement of a telephone directory is Leon v. Pacific Tel. & Tel. Co., 91 F.2d 484 (9th Cir. 1937). In that case, Leon published a directory which was prepared by taking the information contained in Pacific's San Francisco telephone directory and rearranging it according to telephone numbers in numerical order followed by the subscriber's name. Pacific brought suit for temporary and permanent injunctions, damages and costs alleging violation of its copyright. The trial court entered judgment for Pacific. On appeal the court concluded that a telephone directory may

be copyrighted. In doing so it quoted the following from Jeweler's Circular Pub. Co. v. Keystone Pub. Co., 281 F. 83 at 88, cert. denied, 259 U.S. 581, 42 S.Ct. 464, 66 L.Ed. 1074:

The right to copyright a book upon which one has expended labor in its preparation does not depend upon whether the materials which he has collected consist or not of matters which are publici juris, or whether such materials show literary skill or originality, either in thought or in language, or anything more than industrious collection. The man who goes through the streets of a town and puts down the names of each of the inhabitants, with their occupations and their street number, acquires material of which he is the author. He produces by his labor, a meritorious composition, in which he may obtain a copyright, and thus obtain the exclusive right of multiplying copies of his work. Id., 91 F.2d at 486

Other cases supporting the conclusion reached by the court in *Leon* are Cincinnati and Surburban Bell Tel. Co. v. Brown, 44 F.2d 631 (D.C.S.D.Ohio 1930); Southern Bell Tel. & Tel. Co. v. Donnelly, 35 F.Supp. 425 (D.C.S.D.Fla. 1940); Consumers Union of U. S., Inc. v. Hobart Mfg. Co., 189 F.Supp. 275 (D.C.S.D.N.Y.1960), and Donald v. Zack Meyer's TV Sales and Service, 426 F.2d 1027 (5th Cir. 1970), cert. denied, 400 U.S. 992, 91 S.Ct. 459, 27 L.Ed.2d 441. It has also been specifically held that copying of a portion of a telephone directory in order to prepare a separate directory for a town included in the directory constitutes infringement. Cincinnati and Suburban Bell Tel. Co. v. Brown, *supra*; see also Markham v. A. E. Borden Co., 206 F.2d 199 (1st Cir. 1953).

■ Defendants next contend plaintiff's copyright, if originally valid, is now invalid because a third party has published a "Criss Cross" directory for the cities of Little Rock and North Little Rock which contains the same listing information except in a different for-

mat. This contention is likewise without merit. It is true that a copyright may be abandoned. Hampton v. Paramount Pictures Corp., 279 F.2d 100 (9th Cir. 1960), cert. denied, 364 U.S. 882, 81 S.Ct. 170, 5 L.Ed.2d 103. However, in order to effect an abandonment, the proprietor must intend to surrender his right and this must be manifested by some overt act. Hampton v. Paramount Pictures Corp., *supra*; Imperial Homes Corp. v. Lamont, 458 F.2d 895 (5th Cir. 1972); Anno. 84 A.L.R.2d 464. No such overt act on the part of plaintiff has been proven in this case. Moreover, the "Criss Cross" directory was not introduced into evidence and there was no proof how the listings contained in that directory were obtained. It should be made clear here that plaintiff's copyright does not extend to the individual names and addresses listed in its directory, but rather to the compilation of the same. There is nothing to stop another compiler obtaining this information, which is in the public domain, by independent research. To quote 18 Am. Jur.2d Copyright and Literary Property § 118 at page 405:

A compiler of a directory cannot acquire by a copyright a monopoly of the matter published, so as to preclude another from compiling a copyrightable directory along similar lines, where such subsequent compiler investigates and determines for himself the matter to be included from the original sources of information which are open to all.

What a subsequent compiler cannot do is copy from an already copyrighted directory and thereby save himself the labor and expense incurred by the prior compiler. Leon v. Pacific Tel. & Tel. Co., *supra*; Adventures in Good Eating v. Best Places to Eat, 131 F.2d 809 (7th Cir. 1942).

■ We now reach the factual issue whether defendants copied substantial portions of plaintiff's directory. Plaintiff offered evidence showing that errors in the spelling of names and addresses which occurred in plaintiff's directory were faithfully repeated in defendant's directory. These common errors create a *prima facie* case of copying. Sub-Contractors Register v. McGovern's C & B Manual, 69 F.Supp. 507 (D.C.S.D.N.Y.1946); American Travel & Hotel Directory Co. v. Gehring Pub. Co., 4 F.2d 415 (D.C.S.D.N.Y.1925). In addition, plaintiff offered specific proof of copying. The testimony of Ms. Le-Nelle Campbell, owner of the LeWay Composing Service of Ft. Worth, Texas, reveals Dan A. Smith contracted with her in June 1972 for the typesetting of defendant's directory. To perform this function, Mr. Smith furnished Ms. Campbell a copy of plaintiff's directory with all the North Little Rock listings underscored. Ms. Campbell copied these listings in typesetting defendant's directory.

■■ Plaintiff also introduced a series of exhibits showing that original art work prepared by plaintiff and published as advertising in its directory was duplicated in advertisements appearing in defendant's directory. Such advertisements are subject to copyright protection. Bleistein v. Donaldson Lithographing Co., 188 U.S. 239, 23 S.Ct. 298, 47 L.Ed. 460 (1903); 18 C.J.S. Copyright and Literary Property § 101. Defendants admit copying the art work, but allege it was permissible because authority to do so had been granted by the advertisers. This cannot constitute a justification without proof that plaintiff has assigned reproduction rights to its advertisers. Mr. Canada, who heads plaintiff's directory operation, testified plaintiff, as a matter of policy, does not make such assignments.

■ The Court finds and concludes from the evidence in this case that defendants have, in fact, copied substantial portions of plaintiff's 1972 "Little Rock —North Little Rock and suburban areas" telephone directory and in so doing have infringed upon plaintiff's copyright.

Copyright infringement is a tort and all those who participate in an infringement are jointly and severally liable. Screen Gems—Columbia Music, Inc. v. Meltis & Lebow Corp., 453 F.2d 552 (2d Cir. 1972); Turton v. United States, 212 F.2d 354 (6th Cir. 1954); Ted Browne Music Co. v.·Fowler, 290 F. 751 (2d Cir. 1923). Officers or directors of a corporation guilty of infringement are individually liable if personally participating in the acts constituting infringement or if they are sole shareholders. Hagemeyer v. Insect-O-Lite Co., Inc., 291 F.2d 696, 699 (6th Cir. 1961); General Electric Co. v. Wabash Appliance Corp., 93 F.2d 671, 674 (2d Cir. 1938), cert. denied, 303 U.S. 641, 58 S. Ct. 610, 82 L.Ed. 1101. It is not necessary to pierce the corporate veil. Int'l Mfg. Co., Inc. v. Landon, Inc., 336 F.2d 723, 728–729 (9th Cir. 1964), cert. denied, 379 U.S. 988, 85 S.Ct. 701, 13 L. Ed.2d 610; H. M. Kolbe Co. v. Shaff, 240 F.Supp. 588 (D.C.S.D.N.Y.1965). Consequently, the Court finds plaintiff is entitled to damages and injunctive relief against all the defendants jointly and severally.

## UNFAIR COMPETITION

We turn now to plaintiff's allegations that the use of the words "Yellow Pages," the Yellow Pages logo, which we have previously described, and the printing of classified advertising on yellow paper in defendant's directory constitutes unfair competition which this Court should enjoin. Plaintiff's claim is grounded on defendant's alleged infringement of a common law trade name and mark which have not been federally registered. Therefore, the substantive law of Arkansas applies. It is established that the Arkansas law of trademarks, trade names and unfair competition follows and is in accord with the general law. Shoppers Fair of Arkansas, Inc. v. Sanders Co., 207 F.Supp. 718, 725 (W.D.Ark.1962), aff'd, 328 F.2d 496 (8 Cir.), Liberty Mutual Ins. Co. v. Liberty Ins. Co. of Texas, 185 F.Supp. 895, 903 (E.D.Ark.1960).

As a preface to the evaluation of this phase of plaintiff's case, it will be well to bear in mind that the law of trade-marks is but a part of the broader law of unfair competition and that the term "unfair competition" in a case of this nature means a course of dealing which leads, or is likely to lead, consumers into believing that the goods or services of one supplier are those of another. Hanover Star Milling Co. v. Metcalf, 240 U.S. 403, 412, 36 S.Ct. 357, 60 L.Ed. 713 (1916); Seven Up Co. v. Cheer Up Sales Co. of St. Louis, Mo., 148 F.2d 909 (8th Cir. 1945); 87 C.J.S. Trade-Marks, Etc. § 13. Trade-marks and trade names are protected against use or limitation on the grounds of unfair competition, and in resolving the issue of infringement the same standard applies, that is, whether there is likelihood of confusion among consumers. Sweetarts v. Sunline, Inc., 380 F.2d 923, 927 (8th Cir. 1967) and cases cited therein.

A "trade-mark" is a name, sign or mark which one adopts to denominate commercial goods originating from him. It is, in effect, a commercial signature. 87 C.J.S. Trade-Marks, Etc. § 1; 3 Callman, Unfair Competition and Trade-Marks § 76.2(a), p. 1186 (2d Ed. 1950). Generally, a "trade name" applies to the business and its good will while a "trade-mark" applies to the commodity to which it is fixed. American Steel Foundries v. Robertson, 269 U.S. 372, 380, 46 S.Ct. 160, 70 L.Ed. 317 (1926); Shoppers Fair of Ark., Inc. v. Sanders Co., *supra*. It has been said that the law of trade names is identical with that of trade-marks. Any rights that may accrue in a trade name is by reason of the fact that such trade name becomes in law, a trade-mark. Farmers Educational and C. Union v. Iowa Farmers Union, 150 F.Supp. 422 (D.C.S.D. Iowa 1957), aff'd, 250 F.2d 809 (8 Cir.), cert. denied, 356 U.S. 976, 78 S.Ct. 1139, 2 L.Ed.2d 1149.

If a mark or name is arbitrary, unique, and distinct, it is entitled to protection as a trade-mark as soon as

it is employed. Sweetarts v. Sunline, Inc., *supra*. However, this does not mean that the courts will not protect generic or descriptive marks and names which cannot qualify as a technical trade-mark. Property rights in such can be acquired if "secondary meaning" is established. Armstrong Paint and Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 325, 59 S.Ct. 191, 83 L.Ed. 195 (1938). The doctrine of secondary meaning and its ramifications is succinctly explained in Liberty Mutual Ins. Co. v. Liberty Ins. Co. of Texas, *supra*, 185 F.Supp. at page 903 as follows:

> "There are certain names, marks and symbols which in their primary sense are merely generic or descriptive and do not ordinarily indicate the origin of goods or services. Such names, marks, or symbols, when used in their primary sense, cannot form the subject matter of a trade or service mark. However, a name, mark, or symbol by long and exclusive use and advertising by one person in the sale of his goods and services may become so associated in the public mind with such goods or services that it serves to identify them and distinguish them from the goods or services of others. When such an association exists, the name, mark, or symbol is said to have acquired a 'secondary meaning' in which the original user has a property right which equity will protect against unfair appropriation by a competitor. Armstrong Paint & Varnish v. Nu-Enamel Corp. [305 U.S. 315, 59 S.Ct. 191, 83 L.Ed. 195] supra; Katz Drug Co. v. Katz, 8 Cir., 188 F.2d 696; Beneficial Industrial Loan Corp. v. Kline, 8 Cir., 132 F.2d 520; Beneficial Loan Corp. v. Personal Loan & Finance Corp., D.C.Ark., 100 F.Supp. 838; 87 C.J.S. [Trade-Marks, Trade-Names and Unfair Competition] supra, § 90."

Having stated the law, we now will review the facts. The proof shows that for the past 40 years, plaintiff has printed the classified advertising section of its telephone directory for the Little Rock exchange on yellow paper and has called that section the "Yellow Pages." The 1941 directory is illustrative. The classified section is printed on yellow paper and contains an advertisement reading "Looking for something, the Yellow Pages will tell you who sells it." The Yellow Pages logo was first employed by plaintiff on the cover of its 1961 directory for the Little Rock exchange.* This directory likewise has the classified advertising section printed on yellow paper and contains company advertisements such as "Find it fast in the Yellow Pages."

Plaintiff has extensively promoted the Yellow Pages in the Little Rock metropolitan area for a number of years. Plaintiff's Yellow Pages advertising stresses two principal themes. The general public is urged to refer to the Yellow Pages because they contain valuable shopping information and are easy to use. Businessmen are urged to purchase classified advertisements in the Yellow Pages in order to increase sales.

In 1972, plaintiff ran 237 Yellow Pages commercials on Little Rock's three television stations, 2085 commercials on 10 Little Rock radio stations and 12 advertisements in three Little Rock newspapers. In addition, a large number of Bell System Yellow Pages commercials appeared on national television programs shown on the Little Rock television stations and in national magazines which are circulated in Little Rock. To illustrate, in June 1972, seven commercials were carried on such television shows as Cannon, C.B.S. Evening News, Hawaii Five-O, C.B.S. Thursday Night Movie and A.A.U. Track Meet. Advertisements were printed in U.S. News and World Report, Advertising Age, Sales Management, Fortune and Industrial Marketing. In 1972, plaintiff paid $48,902 to advertise the Yellow

---

* The 1961 logo differs slightly from the one presently used. It depicts a telephone instrument in the lower left hand corner of the square, rather than the receiver across the top of the square. The testimony is that this alteration was made in 1964.

Pages in the Little Rock metropolitan area and for the five year period from 1968 through 1972, plaintiff paid more than $230,000 for such advertising.

Two expert witnesses testified as to the impact of plaintiff's Yellow Pages advertising on the public in the Little Rock area. Mr. Gene McCoy has had 22 years professional experience in advertising. He has taught advertising at the University of Arkansas at Little Rock for 12 years. For the past 15 years he has been president of a Little Rock advertising firm which does business in 22 states. Mr. Ben Combs is a partner in a Little Rock advertising, marketing and public relations firm which serves clients in a three state area. Mr. Combs' qualifications as an expert were stipulated to.

Mr. McCoy and Mr. Combs testified, in their opinion, that because of plaintiff's extensive advertising program, the phrase "Yellow Pages" and the logo have become identified in the public's mind with the classified advertising section of plaintiff's telephone directory. Both also testified that, due to the similarity of plaintiff's and defendant's directories, the public would, in their opinion, generally believe defendant's directory was published by plaintiff.

In the Court's opinion, the words "Yellow Pages" cannot, standing alone, qualify as a technical trade-mark for the reason that they literally describe the article upon which they are used; i. e., advertising printed on yellow pages. In re W. A. Sheaffer Pen Co., 158 F.2d 390, 34 CCPA (Patents) 771 (1946)—"Fineline" pens; Keller Products v. Rubber Linings Corp., 213 F.2d 382 (7th Cir. 1954)—"Tub-Kove" bathtub sealer; Griffin Mfg. Co. v. It Shoe Polish Co., 80 F.2d 514 (4th Cir. 1935)—"All White" shoe polish; Ralston Purina Co. v. Thomas J. Lipton, Inc., 341 F.Supp. 129 (S.D.N.Y.1972)— "Tender Vittles" cat food; 87 C.J.S. Trade-Marks, Etc. § 33. However, after weighing all the evidence in this case, the Court is convinced that the public in

the Little Rock marketing area has come to identify the words "Yellow Pages" as a symbol signifying a product coming from a single source, that is to say, the classified advertising section of plaintiff's telephone directory. In short, the Court finds secondary meaning has been established.

Factors determining whether secondary meaning has attached in a particular case include: (1) long use; (2) advertising; (3) sales volume; and (4) identity of source or origin in the minds of the purchasing public. North American Airlines v. Civil Aeronautics Board, 97 U.S.App.D.C. 85, 228 F.2d 432 (1955); King Pharr Canning Operations v. Pharr Canning Co., 85 F.Supp. 150 (W.D.Ark.1949); Armstrong Paint and Varnish Works v. Nu-Enamel Corp., *supra*; 87 C.J.S. Trade-Marks, Etc. § 90. Plaintiff's proof satisfies all these tests. For many years it has published telephone directories for the Little Rock exchange containing and advertising the Yellow Pages. Hundreds of thousands of dollars worth of Yellow Pages classified advertising has been purchased by businesses in Little Rock and North Little Rock. Plaintiff has extensively advertised the Yellow Pages in newspapers, radio, and television. The purchasing public uses the Yellow Pages of plaintiff's directory to obtain information and, consequently, cannot help but recognize that they are published by plaintiff. In this circumstance, the descriptive term "Yellow Pages" becomes a valid trade-mark which is entitled to protection. To quote the United States Supreme Court's landmark opinion in Armstrong Paint & Varnish Works v. Nu-Enamel Corp., *supra*, 305 U.S. at page 335, 59 S.Ct. at page 201:

Here we have a secondary meaning to the descriptive term, 'Nu-Enamel.' This establishes, entirely apart from any trade-mark act, the common law right of the Nu-Enamel Corporation to be free from the competitive use of these words as a trade-mark or trade name. [Citing cases]

**910**

See also, W. E. Bassett Co. v. Revlon, Inc., 435 F.2d 656 (2d Cir. 1970); King Pharr Canning Operations v. Pharr Canning Co., *supra*; 1 Nims, Unfair Competition and Trade-Marks § 36 (1947); Restatement of Torts § 716(b).

■ The Court further finds that the Yellow Pages logo qualifies as a technical trade-mark. The question whether a trade-mark is distinctively valid depends upon its elements as a whole, not its dissected parts. Although the logo contains the descriptive words "Yellow Pages," the drawing of the spread open book with the receiver above it, all contained within a square, creates a distinctive mark. Restatement of Torts § 724; 87 C.J.S. Trade-Marks, Etc. §§ 50, 53; Estate of P. D. Beckwith v. Comm'r of Patents, 252 U.S. 538, 40 S.Ct. 414, 64 L.Ed. 705 (1920); Ezee Stone Cutter Mfg. Co. v. Southwest Indus. Prod., 262 F.2d 183 (8th Cir. 1959); Cleo Syrup Corp. v. Coca-Cola Co., 130 F.2d 416 (8th Cir. 1944). Furthermore, the Court finds the logo has an established secondary meaning in the Little Rock area in that plaintiff has used it conjunctively with the term "Yellow Pages" at all times.

■ Having determined that the words "Yellow Pages" and the logo constitute valid trade-marks in which plaintiff possesses a property right, we now reach the ultimate question—whether there is a likelihood of confusion on the part of those who may use defendant's directory. To quote Sweetarts v. Sunline, Inc., *supra*:

"In resolving the issue of infringement, that is, in determining if the prior user of a mark is entitled to protection against a subsequent user, the test universally applied is whether there is a likelihood of confusion among consumers. (Citing cases) Plaintiff need not show actual confusion. (Citing cases) Nor need plaintiff show actual or possible monetary injury. (Citing cases) 380 F.2d 923 at 926, 927

The issue of likelihood of confusion is one of fact for resolution by the trial court. Electronic Communications, Inc.

v. Electronic Components for Industry Co., 443 F.2d 487 (8th Cir. 1971), cert. denied, 404 U.S. 833, 92 S.Ct. 80, 30 L.Ed.2d 63, and it is said that "Ocular comparison of the tout ensemble is the best means of determining the fact of deceptive and infringing imitation." 87 C.J.S. Trade-Marks, Etc. § 68, p. 290. Robinson Co. v. Plastics Research Dev. Corp., 264 F.Supp. 852, 861 (W.D.Ark. 1967).

■ Comparison of plaintiff's and defendant's directories discloses both contain white alphabetical pages and yellow classified advertising pages. Both display the Yellow Pages logo on the lower right corner of the front cover. Both directories contain numerous advertisements in the classified section extolling the Yellow Pages and using the logo. For example, defendant has an ad reading "Yellow Pages, your best advertising dollar." Plaintiff has an ad that reads "Read and acclaimed by millions, the Best Seller, the who's who of all ages. The Yellow Pages." Both directories advertise that "3.6 billion times a year, people refer to the Yellow Pages." Both directories also repeatedly urge customers to "Let your fingers do the walking." Plaintiff's directory carries its name "Southwestern Bell" on the front cover. Defendant's directory cover does not identify the publisher. From its comparison, the Court has no hesitation in finding that there exists the probability of a high degree of confusion on the part of consumers due to the similarity of the two directories.

■■ It is the duty of a subsequent trader coming into an established trade to dress his goods in such a way as will not cause confusion between his goods and that of a prior trader. J. C. Penney Co. v. H. D. Mercantile Co., 120 F.2d 949 (8th Cir. 1941); 87 C.J.S. Trade-Marks, Etc. § 95. Defendants have done just the opposite. Under these circumstances, it may be presumed that defendants have deliberately simulated plaintiff's directory in order to mislead the public and thereby benefit from plaintiff's established reputation and good will. It is also obvious, as Mr.

Combs testified, that defendants have copied plaintiff's trade-marks, in order to take advantage of plaintiff's Yellow Pages promotional program in selling classified advertising for their own directory. Consequently, the Court finds and concludes that defendants have infringed plaintiff's Yellow Page trade-marks and have engaged in acts of unfair competition in this case. Hanson v. Triangle Publications, 163 F.2d 74 (8th Cir. 1947), cert. denied, 332 U.S. 855, 68 S.Ct. 387, 92 L.Ed. 424.

 The Court further concludes that defendants' use of yellow-colored paper for the classified section of their directory should be enjoined under the circumstances existing in this case.

 Color by itself may not be a trade-mark, but a color used in conjunction with other marks and/or in an arbitrary pattern can be a valid trade-mark. 87 C.J.S. Trade-Marks, Etc. § 47. The instant case is closely analogous to Eastman Kodak Co. v. Fotomat Corp., 317 F.Supp. 304 (N.D.Ga.1970) in which defendant was enjoined from using yellow roofed kiosks. The court found that an ocular inspection of defendant's kiosks permitted a finding of likelihood of confusion based on the "yellow roof, the words 'Kodak film' and use of the colors yellow, red and black." Consequently, the court ordered the defendant to change the format and colors of its kiosks to prevent customer confusion. Plaintiff's directory format consists of the logo, the words "Yellow Pages" and the yellow-colored pages. The combination of these three elements has come to identify the origin of plaintiff's directory and all should be protected as one unit to prevent customer confusion. 87 C.J.S. Trade-Marks, Etc. § 68, p. 290; David Sherman Corp. v. Heublein, Inc., 340 F.2d 377 (8th Cir. 1965).

 Defendants admit copying plaintiff's trade-marks but contend they were free to do so because other telephone companies serving other communities use the same marks in their directories. Plaintiff's witnesses testified that the Bell System and independent telephone companies have an arrangement allowing mutual use of the marks. However, this is all beside the point. A trade-mark may acquire a secondary meaning in one area, but lack such in another. Liberty Mutual Ins. Co. v. Liberty Ins. Co. of Texas, *supra*. The relevant marketing area here is the Little Rock metropolitan area and in this area only plaintiff used the marks until defendants published their directory. Plaintiff's proof of secondary meaning and public confusion was restricted geographically to the Little Rock metropolitan area and the Court's findings are likewise so limited. A trade-mark is inseparable from the good will of the business of its possessor and right to its exclusive use must be limited to the market wherein it is established. Shoppers Fair of Arkansas, Inc. v. Sanders Co., *supra;* Beneficial Loan Corp. v. Personal Loan & Finance Corp., 100 F.Supp. 838 (E.D. Ark.1951); Griesedieck Western Brewery Co. v. People Brewing Co., 149 F.2d 1019 (8th Cir. 1945).

### REMEDY

The Court finds the equities in this cause are with the plaintiff and that plaintiff is entitled to the relief prayed for in its complaint.

 Plaintiff shall be granted a permanent injunction against defendants individually and jointly enjoining them from infringing upon plaintiff's copyrights in its directories heretofore published or which may be published in the future.

The damages recoverable for infringement of copyright are established by the Copyright Law, 17 U.S.C.A. § 101(b). This statute provides three bases for computing the amount of recovery, the damages suffered by the copyright owner, the profits made by the infringer and in addition, or alternatively, statutory damages ranging from $250 minimum to $5,000 maximum. The amount of damages to be awarded is largely within the discretion of the trial court. Peter Pan Fabrics v. Jobela Fabrics, Inc., 329 F.2d 194 (2d Cir. 1964); F. W. Woolworth Co. v. Contemporary Arts,

344 U.S. 228, 73 S.Ct. 222, 97 L.Ed. 276 (1952).

After taking into consideration all of the facts, the Court finds plaintiff should be awarded $500.00 in damages for defendants' copyright violation. It is further adjudged that plaintiff should recover its costs and attorney fees in the amount of $2,000.00 as permitted by the Copyright Law.

Plaintiff shall also be granted a permanent injunction against defendants individually and jointly enjoining them from use of plaintiff's Yellow Pages logo, or any design or similar nature on future directories published by them for the Little Rock metropolitan area and also enjoining them from using the words "Yellow Pages" or yellow paper in such directories in a manner that might cause the public to believe defendant's directories originate from plaintiff. Plaintiff has not prayed for damages with respect to unfair competition allegations of its complaint and, consequently, none are awarded.

Let a decree be issued in accordance with this opinion.