**UNITED TELEPHONE COMPANY OF MISSOURI, Plaintiff,**

v.

**JOHNSON PUBLISHING COMPANY, INC., Defendant.**

No. 86–4372–CV–C–5.

United States District Court, W.D. Missouri, C.D.

Oct. 6, 1987.

Execution Stayed Pending Appeal Oct. 22, 1987.

Carter J. Kokjer, Kokjer, Kircher, Bradley, Wharton, Bowman & Johnson, Kansas City, Mo., for plaintiff.

John Cleary, Daniel Ross, Kansas City, Mo., Dan Chase, Overland Park, Kan., for defendant.

## ORDER

SCOTT O. WRIGHT, Chief Judge.

Before the Court are cross-motions for summary judgment filed by plaintiff and defendant in this action alleging copyright infringement under Title 17 of the United States Code, and in which plaintiff seeks injunctive relief and monetary damages. For the following reasons, the Court finds that defendant has infringed upon plaintiff's copyright, and, thus, plaintiff is entitled to injunctive relief and monetary damages.

### Factual Background

The facts in this case are pretty much undisputed and the parties have stipulated to the following factual findings.

To begin with, this is a civil action for copyright infringement brought under Title 17 of the United States Code. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. § 1338.

Plaintiff United Telephone Company of Missouri ("United") is a Missouri corporation, and provides telephone service in Jefferson City, Missouri, and the areas surrounding it. In conjunction with its provision of telephone service, United annually publishes a telephone directory entitled "The Phone Book."

At the time United published its 1985 Jefferson City telephone directory, it was regulated by the Missouri Public Service Commission. Under the Code of State Regulations governing telecommunication services, Title 4, C.S.R. 240–32.050, telephone books must be published at regular intervals and must list the names of all customers and their addresses (if available) and telephone numbers, with the exception of public telephones, mobile telephones and telephone service unlisted at a customer's request. United's 1985 Jefferson City telephone directory complies with this requirement.

Defendant Hiram Publishing, Incorporated, is a Colorado corporation, doing business as Johnson Publishing Company, Inc., all collectively referred to hereinafter as "Johnson."

United is the telephone service company for Jefferson City, Missouri. As part of United's operation, it has for many years published an annual telephone directory. Each directory includes, in addition to informational pages concerning service and procedures, a "white pages" section containing an alphabetical listing of the names, addresses and telephone numbers for telephone service subscribers, both residential and business, and a "yellow pages" section. When a person or business located within the exchanges covered by United's 1985 Jefferson City telephone directory subscribed to telephone service, United obtained for its records the customer's name and address. The names, addresses and telephone numbers listed in the white pages of United's 1985 Jefferson City telephone directory were obtained by United as a result of the persons listed subscribing to telephone service from United. United did not do any door-to-door or telephonic canvass to acquire, or to verify, any of the residential listing information shown in the white pages of its 1985 Jefferson City telephone directory.

Since 1982, the white pages of United's telephone directories have been prepared through the use of a master computer data base containing the listing information. Changes and additions to the data base are made by employees of United as they occur during each year from year to year. These changes and additions result from a variety of incidents, such as new subscribers, change in address, change in telephone numbers and the like. Each addition or change is recorded in writing as a "Service Order" which usually contains additional information concerning coding and customer information. The Service Orders are entered into the data base through a computer terminal as they occur, usually on a daily basis throughout the year. The information recorded in most of these Service Orders is obtained as a result of the plaintiff providing telephone service to the person listed.

The master data base for United is not limited to Jefferson City subscribers alone. The master data base is supplied listing changes from business offices in the United system in addition to the Jefferson City office.

When the time arrives for publication of a new Jefferson City telephone directory, steps are taken to cause the computer to produce a magnetic tape which contains listings, principally name, address and telephone number for the Jefferson City telephone directory arranged in alphabetical order. The computer is requested to produce a listing that incorporates all of the changes that have been made, and the computer is programmed to provide such a listing. The tape, when produced, is sent to the directory printer and a galley proof is printed from the tape. The galley is then proofed manually, line by line, at United, and the directory is then printed from the corrected proof. Thereafter, the telephone directories are distributed.

United published in May, 1985, its Jefferson City telephone directory. A principal component of that directory comprised the alphabetized white page listings of residences and businesses to whom the plaintiff provided telephone service, identifying each listing (in most cases) by name, address and telephone number. The listings also include non-local listings of parties who desire to be included.

The white-page listings of the United 1985 telephone directory were compiled by United personnel using the aforementioned procedures. The white pages in the United 1985 directory differed from the 1984 white pages, principally in that the 1985 directory involved a substantial number of what are termed "new listings," namely, listings that did not appear in the 1984 directory which the 1985 directory was intended to supplant. The new listings for the 1985 United directory totalled approximately five thousand (5,000) in number, which represented approximately twenty percent (20%) of the total listings in the 1985 directory (a total of 26,561). Included in these

new listings were listings with telephone prefixes which were not covered in the defendant's 1986 city directory.

The United Telephone directories have been duly and regularly copyrighted and certificates of copyright registration have been issued, including a copyright for the 1985 United directory.

In June of 1986, Johnson published two editions of a Jefferson City, Missouri City Directory. One, a soft cover edition, was the residential edition, and the other, a hard cover directory, was Johnson's business edition. Both editions contained the same white pages listings. However, the business edition contained more information for the individual listings than did the residential edition. The business edition of Johnson's 1986 City Directory sold to customers for a base price of $120.00 each and the residential edition sold for a price of $6.00 each.

Both editions of Johnson's 1986 Jefferson City directory included both white pages and yellow pages in which listings were arranged in an alphabetical format for Jefferson City and the suburb towns of Hartsburg and Holts Summit. The prefixes covered by Johnson's directory were 634, 635, 636, 751, 893 and 896.

Commencing in 1943, and continuing until 1972, a publishing company named Mullin Kille Co. published a city directory for the Jefferson City area. Mullin Kille Co. obtained the information in the white pages listings of its Jefferson City directories by conducting door-to-door canvasses.

In 1973, Johnson purchased from Mullin Kille Co. the listing information data base used to publish its 1971 Jefferson City directory. Mullin Kille Co.'s last publication of its Jefferson City directory was for 1971. Except for 1981, Johnson published a city directory for the Jefferson City area every year from 1974 through 1986.

The listing information contained in the 1974 Jefferson City directory published by Johnson was obtained by Johnson updating, by a door-to-door canvass, the listing information data base it purchased in 1973 from Mullin Kille Co. The listing information contained in each of the directories published by Johnson for the years subsequent to 1974 was acquired by Johnson updating the listing information contained in the previous year's directory. The updating for the years 1975 through 1980 was done by Johnson doing an annual door-to-door canvass. The updating for each of the years subsequent was done in a manner that is the bone of contention in this lawsuit, as set forth below (pages 9 through 13). The reason for the change from a door-to-door canvass was that Johnson found it extremely difficult to find people who were willing to hire or to conduct a door-to-door canvass. Also, with the advent of both husbands and wives working outside the home, it had become difficult to find anyone at home during normal business hours.

United's 1985 Jefferson City telephone directory contains listings for, in addition to the towns of Jefferson City, Hartsberg and Holts Summit, the towns of Brazito, Centertown, Eugene, New Bloomfield, Russellville, St. Thomas and Taos. Johnson's 1986 Jefferson City directory contains listings for Jefferson City, Hartsburg, and Holts Summit only. United's 1985 telephone directory contains listings with the telephone prefixes of 496, 584, 498, 491, 782, 477 and 395. Johnson's 1986 directory does not contain listings for these prefixes. The telephone prefixes which are common to United's 1985 telephone directory and Johnson's 1986 directory are 634, 635, 636, 751, 893 and 896.

The white pages of the residential edition of the Johnson's 1986 Jefferson City directory contained in an alphabetical format a listing of names, addresses (including mailing addresses) and phone numbers of residences and businesses. In addition, these white pages stated the spouse's name and the names and birth dates of any children. The business listings in the white pages of the residential edition included the names of the principals in the business and a description of the kind of business it was. The white pages of the business edition of the Johnson's 1986 Jefferson City directory contained in an alphabetical format a listing of names, addresses (including mailing

addresses), phone numbers of residences and businesses. Additionally, these white pages stated the name of the spouse and the names and birth dates of any children. Homeowners were also identified. Also included were the names of principals in the business and a description of the type of business. Additionally, employment information was shown for the listee and the spouse.

Both the residential and business editions of Johnson's 1986 Jefferson City directory contained a "Jefferson City, Missouri Telephone Locator" which was a guide for locating area residents and businesses when only the telephone number was known. This telephone locator was arranged into sections by prefixes so that one desiring to know who has a number with a particular prefix could look that number up in the locator and obtain the name of the resident or business to whom the number is assigned.

The business edition of Johnson's 1986 directory included a street guide in which residential and business addresses were arranged according to street and number. Both the business and residential editions of Johnson's 1986 Jefferson City directory contained community interest introductory materials such as a demographic study of Jefferson City, a list of the Jefferson City public schools, a list of the names of city officials, a list of the Cole County elected officials, and a list of social and service clubs and business associations.

Both editions of Johnson's directory contained in the white pages separate listings for members of a household who were over 18. Additionally, both editions of Johnson's 1986 directory listed persons who did not subscribe to any telephone service and who did not wish their telephone numbers published.

United's 1985 Jefferson City telephone directory was published in May of 1985. It contained in the white pages only names, addresses and telephone numbers of some non-residents. United's 1985 telephone directory did not contain the additional information set forth in Johnson's white pages. United's 1985 Jefferson City telephone directory also did not contain listing for persons who did not subscribe to telephone service. However, some of the listings are for users of telephone services who are located outside the areas served by United. Finally, the arrangements used in United's telephone directory and in Johnson's city directory are both alphabetical but not entirely identical.

Johnson used a number of steps in preparation of its 1986 Jefferson City directory for publication. The first step performed by Johnson was to prepare what is called a town code and telephone prefix analysis of the listing information data base used for the white pages of its 1985 Jefferson City directory. This step was to conduct the audit described below.

Next, Johnson performed what it calls a prefix and town code audit. This step was necessary to enable defendant to determine whether any towns and telephone prefixes needed to be added to, or deleted from, the listing information data base to be used for the 1986 directory.

Johnson then prepared a preliminary schedule of listings for the white pages. This step was accomplished by the defendant preparing a computer printout of the listing information contained in the white pages of its 1985 Jefferson City directory.

Next, Johnson did an update to the listing information contained in the white pages of Johnson's 1985 directory. This was done by Johnson comparing in alphabetical sequence the white pages of United's 1985 Jefferson City telephone directory with Johnson's 1985 white pages to identify any listings in the United telephone directory listings which did not appear in the white pages of Johnson's 1985 Jefferson City directory. Any such listings were marked in the United telephone directory with either an "R," indicating a residential listing, or a "B," indicating a business listing. All listings so marked were taken to one of the Johnson's keyboard operators. The keyboard operator entered the names, addresses and telephone numbers for such listings into Johnson's listing information data base. This data base entry was not done alphabetically. However, the 1986

Jefferson City directory ultimately printed by Johnson utilized an alphabetical format.

Johnson then prepared, in telephone sequence, computer print-out sheets containing the updated listing information. At the time the print-out sheets were prepared, the only information on them was the printed information.

Next, Johnson prepared and distributed what are called "Urgent Mailers." This was done because some of the listing information data base did not have telephone numbers, only addresses. The purpose of mailing the "Urgent Mailers" to the listings for which defendant had no telephone numbers was to obtain for inclusion in Johnson's listing information data base the telephone number of the occupant at the address, the name of the occupant, the occupant's job title and employer, the name of the occupant's spouse, job title and employer, whether or not the occupant was a homeowner, the number of people in the occupant's family and the name and birth year of any children under eighteen (18) years of age at the address. Instructions on the "Urgent Mailers" requested the occupant to complete the information on the form and return it to Johnson. A total of 1,818 "Urgent Mailers" were mailed by Johnson on September 24, 1985. Out of the 1,818 urgent mailers that were mailed out by Johnson, 475 were returned to Johnson by the occupants.

Next, Johnson, at its facility in Loveland, Colorado, assembled packets to be delivered to surveyors who would be hired to conduct a telephone canvass of the listings contained in the print-out sheets. Each of the survey packets contained print-out sheets containing approximately 280 listings in telephone number, not alphabetical, sequence. After Johnson completed the assembly of the survey packets, it delivered them to Ruth Koechner in Jefferson City, Missouri. Ms. Koechner was hired by Johnson to be in charge of the telephonic canvass to be conducted.

Ms. Koechner hired twenty-five (25) surveyors to conduct the telephonic canvass. She gave each of the surveyors an instruction booklet entitled "The City Directory Survey." These instruction booklets were provided by Johnson and contained instructions as to how the surveyors were to conduct the survey. Ms. Koechner distributed the survey packets among the surveyors.

Commencing in September, 1985, the surveyors made telephone calls to each of the listings contained in the print-out sheets in the survey packets. The purpose of making the calls was to verify the accuracy of the information appearing on the print-out sheets for each listing and to acquire any new, or corrected, information for each listing as to the following areas of inquiry: telephone number, name, address, town name, mailing address, job title, employer, spouse's name, spouse's job and employer, homeowner or not, name and year born of any children under 18 years of age.

The surveyors were instructed by Ms. Koechner to make three attempts at different times (morning, afternoon and evening) to contact the persons listed on the print-out sheets in the survey packets. If, after attempting three times, a surveyor was unable to make contact with someone at the listed telephone number, the surveyor was to refer to the plaintiff's 1985 Jefferson City telephone directory to verify the name, address and telephone number shown on the print-out sheet for the person listed. If the telephone directory showed a different name, address or telephone number than that shown on the survey packet print-out sheet, then the surveyor wrote the change on the print-out sheet containing the listing. If the name, address and telephone number shown in the telephone directory was the same as shown on the survey packet print-out sheet, the surveyor made no change on the print-out sheet. These listings were marked "PB", meaning verified from the telephone directory.

The surveyors were paid by Johnson for their work on the basis that they made $.15 for each listing with which they made telephonic contact and $.05 for any listing called but where no contact was made. The surveyor coordinator and the surveyors spent 995.3 hours in conducting the telephonic canvass that was done in connec-

tion with the preparation of Johnson's 1986 Jefferson City directory. The survey coordinator and the surveyors were paid $5,812.24 by Johnson for the work they performed.

As the surveyors completed their telephonic survey of the listings contained in the survey packet print-out sheets, the packets were returned to Johnson in Loveland, Colorado. The survey was concluded by the end of October, 1985. Upon receiving the survey packets from the surveyors, Johnson performed an audit of the surveyor packet print-out sheets. During the audit process, all listings in the survey packet print-out sheets were reviewed for spelling errors. Also, during this audit, Johnson attempted to contact by telephone any listing whom the surveyors were unable to contact during the telephonic survey. Also, during this audit, Johnson reviewed the returned Urgent Mailer forms and the information shown on them was added to the listing information data base used for the white pages of Johnson's 1986 Jefferson City directory.

Upon completion of this audit process, the information gathered during the survey process and the audit process was entered into the listing information data base and for the white pages of Johnson's 1986 Jefferson City directory. After checking the resulting data base for listing duplications or errors, it was used in the printing of the white pages of Johnson's 1986 directory.

Of the white page listings which Johnson entered into its listing information data base as a result of the comparison which Johnson did with United's 1985 Jefferson City telephone directory, all but 214 were contacted either by the surveyors during the telephone canvass or by Johnson during the post-canvass audit. Attempts to contact the 214 were made but were unsuccessful. A total of 23,629 white page listings appeared in Johnson's directory.

Of the 23,629 white page listings in Johnson's 1986 Jefferson City directory, 4,188 are not found in United's 1985 Jefferson City telephone directory. About 2,819 of the white page listings in United's 1985 telephone directory are not found in John-son's 1986 directory. About 15,083 of the white page listings in Johnson's directory are also in United's telephone directory, but more listing information is shown for each listing in Johnson's directory. John-son's directory carried separate listings for members of a household who are over the age of 18. Unless members of a household had separate telephones, United's directory did not carry separate listings for adult members.

United inserted three fictious listings in its 1985 Jefferson City telephone directory for the purpose of showing copying of its telephone directory if these fictitious listings were reproduced in someone else's directory. None of these fictitious listings are found in Johnson's directory.

Exclusive of the time spent by the surveyors in conducting the telephone canvass, employees of Johnson spent 1016.40 hours, at a cost of $7,832.16 to Johnson, in performing work in connection with the preparation of Johnson's 1986 Jefferson City directory.

As shown in Johnson's profit and loss statement relating to Johnson's 1986 Jefferson City directory, the income received from the sale of the 1986 directory was $57,743, the costs were $41,979 and the net profit was $15,764.

In 1985, after it published its 1985 Jefferson City telephone directory, United licensed to Consolidated Directories, Inc., an independent telephone directory publisher, at a fee of $.10 per listing, the 26,561 white pages listings in its 1985 Jefferson City telephone directory. In 1986, after it published its 1986 Jefferson City telephone directory, United licensed to Consolidated Directories, Inc. at a fee of $.49 per listing the white pages listings in its 1986 Jefferson City telephone directory. In addition, charges were made in the amount of one hundred thirty-five ($135.00) dollars.

Subsequent to the publication of United's 1985 Jefferson City telephone directory, and prior to the publication of its 1986 Jefferson City telephone directory, United notified Johnson that it would license the white pages listings in its Jefferson City telephone directory to Johnson. Under

United's program, prior to December 31, 1985, United's license fee would have been $.10 per listing. Subsequent to that date, United's license fee became $.49 per listing. If Johnson had taken a license from United, it would have been required to pay a fee for every listing in the white pages of United's telephone directory, regardless of whether or not some of the listings had appeared in the previous year's telephone directory and regardless of whether or not some of the listings had telephone prefixes and addresses not covered by Johnson's directory. Johnson declined to acquire a license for the listings. At no time prior to the publication of its 1986 directory did Johnson inquire as to what the license fee would be.

**Discussion**

In order to prevail on a claim of copyright infringement, a plaintiff: (1) must establish the ownership of a valid copyright in the work; and (2) must show that there is copying by the defendant. *Southern Bell Telephone & Telegraph Co. v. Associated Telephone Directory Publishers,* 756 F.2d 801, 810 (11th Cir.1985); *Wickham v. Knoxville International Energy Exposition, Inc.,* 739 F.2d 1094, 1097 (6th Cir.1984).

As to the first element, the parties have stipulated that all of United's telephone directories have been duly and regularly copyrighted and that certificates of copyright registrations have been issued, including a copyright for the 1985 United directory. Such evidence would entitle United to a prima facie presumption of copyright validity and ownership, 17 U.S.C. § 410(c), notwithstanding the fact that Johnson does not challenge the validity of United's copyright. *See Williams Electronics, Inc. v. Artic International, Inc.,* 685 F.2d 870, 873 (3rd Cir.1982). Thus, the question for this Court becomes whether

Johnson copied United's 1985 Jefferson City telephone directory.[1]

*A. Copying by Johnson*

The element of copying may be shown by either an admission of copying by the defendant, or by the indirect route of proving access to the directory and substantial similarity between plaintiff's and defendant's works. *Central Telephone Co. of Virginia v. Johnson Publishing Co.,* 526 F.Supp. at 843. Of course, one of the most significant evidences of copying is the copying of errors. *Financial Information, Inc. v. Moody's Investor's Service, Inc.,* 599 F.Supp. 994, 996, n. 3 (S.D.N.Y. 1983); *Central Telephone Co. of Virginia,* 526 F.Supp. at 844.

In this case, the evidence establishes that while Johnson's 1986 Jefferson City directory did not contain any of the fictitious listings contained in United's 1985 telephone directory, the evidence before the Court clearly establishes that Johnson copied from United's 1985 Jefferson City telephone directory.

Johnson has admitted in the stipulations entered into by the parties that in preparing the white pages of its 1986 directory, Johnson compared the white pages of its 1985 directory with United's 1985 Jefferson City telephone directory in order to identify any listings in United's directory which did not appear in the white pages of Johnson's 1985 Jefferson City directory. The listings in United's 1985 directory that did not appear in Johnson's 1985 directory were marked, and Johnson's keyboard operators entered the names, addresses and telephone numbers for such listings into Johnson's listing information data base. This admission by Johnson constitutes direct evidence that Johnson copied United's 1985 directory, thus obviating the need for the Court to resort to an analysis of whether

---

1. As noted by United, the issue of whether telephone directories are copyrightable is well-settled since courts have consistently held that telephone directories are copyrightable. *Hutchinson Telephone Co. v. Fronteer Directory Co.,* 770 F.2d 128 (8th Cir.1985); *Southern Bell Telephone & Telegraph Co. v. Associated Telephone Directory Publishers,* 756 F.2d 801 (11th Cir.

1985); *Leon v. Pacific Telephone & Telegraph Co.,* 91 F.2d 484 (9th Cir.1937); *Central Telephone Co. of Virginia v. Johnson Publishing Co.,* 526 F.Supp. 838 (D.Colo.1981); *Southwestern Bell Telephone Co. v. Nationwide Independent Directory Service, Inc.,* 371 F.Supp. 900 (W.D. Ark.1974).

there was a substantial similarity between the two directories. This "substantial similarity" test is used only when there is no direct evidence of copying. *See Durham Industries, Inc. v. Tomy Corp.*, 630 F.2d 905, 911–12 (2nd Cir.1980).

In *Central Telephone Co.*, the District Court succinctly stated the test to be applied in telephone directory cases by noting that:

> "Courts recognize that a compiler of a directory may make fair use of an existing compilation if he *first* makes an independent canvass, then merely compares and checks his own compilation with that of the copyrighted publication and publishes the result after verifying the additional items derived from the copyrighted publication. [citation omitted] Since the copyright covers the compilation of the information and not the individual names and addresses, if there is substantial copying from plaintiff's work *without an independent canvass initially*, the resulting work will be an infringement even when the defendant later verifies the material by checking the plaintiff's original sources. [citations omitted]." 526 F.Supp. at 843 (emphasis added).

Johnson argues that it has followed this standard set forth in *Central Telephone* in that Johnson began with its own data base, rather than starting with United's 1985 telephone book, and merely compared its 1985 city directory with United's in order to determine if there were any new listings that were not included in Johnson's 1985 data base. Furthermore, Johnson argues that the Court should place particular emphasis on the fact that Johnson exerted independent work effort in preparing and publishing its 1986 Jefferson City directory, which included independent verification of its entire 1985 data base (with the new listings added) by a telephonic canvass for the purpose of publishing a city directory containing information not included in the white pages of United's annual telephone books. However, for a number of reasons, Johnson's contention must be rejected.

■ First, the courts have squarely held that the fact that defendant may have reor-ganized the material it gained from the plaintiff or may have added other materials does not preclude a finding of infringement. *See Rural Telephone Service Co. v. Feist Publications*, 663 F.Supp. 214, 1987 Copyright Decisions (CCH) ¶ 26,084, p. 20,-990 (D.Kan.1987). *See also Leon v. Pacific Telephone & Telegraph Co.*, 91 F.2d at 486–87; *Central Telephone Co. of Virginia*, 526 F.Supp. at 844. Thus, Johnson's contention that no copying took place since it added information to its listings that were not contained in United's listings is without merit.

Second, the case law seems to reject the argument by Johnson that the fact that it started with its own data base and subsequently checked those listings with those in United's directory precludes a finding of copying under the *Central Telephone* standard. In *Rockford Map Publishers, Inc. v. Directory Service Co.*, 768 F.2d 145 (7th Cir.1985), *cert. denied*, 474 U.S. 1061, 106 S.Ct. 806, 88 L.Ed.2d 781 (1986), the Court noted that:

> "[t]he right to 'check back' does not imply a right to start with the copyrighted work. Everyone must do the same basic work, the same 'industrious collection.' 'A subsequent compiler is bound to set about doing for himself what the first compiler has done.' *Kelly v. Morris*, [1866], 1 Eq. 697, 701 (Wood, V.C.). A second compiler must assemble the material *as if there had never been a first compilation;* only then may the second compiler use the first as a check on error." *Id.* at 149 (emphasis added).

■ In this case, the Court cannot conclude that Johnson began its update of its data base listings "as if there had never been a first compilation." Rather, Johnson started with United's 1985 Jefferson City telephone directory to update its data base and subsequently initiated telephonic canvassing after the listings not contained in its data base were entered into the data base by keyboard operators. In the opinion of the Court, such activity constitutes direct evidence of substantial copying, thereby making United's claim for copyright infringement a valid one and which, under the stipulations and evidence submitted by the parties, warrants the grant-

ing of summary judgment in favor of United.[2]

### B. *Fair Use*

Johnson next argues that it has made "fair use" of United's directory based on the fact that it used United's 1985 Jefferson City directory for the purpose of checking and verifying additional information. The "fair use" defense is established by 17 U.S.C. § 107 which provides that:

"Notwithstanding the provisions of section 106, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use, the factors to be considered shall include—

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work."

In addition to this statutory "fair use" defense, the courts have also recognized that "a compiler of a directory or the like may make fair use of an existing compila-tion serving the same purpose if he first makes an honest, independent canvass; he merely compares and checks his own compilation with that of the copyrighted publication; and publishes the result after verifying the additional items derived from the copyrighted publication." *G.R. Leonard & Co. v. Stack*, 386 F.2d 38, 39 (7th Cir.1967). However, under the facts of this case, it does not appear that Johnson can make use of either "fair use" defense.

First, as previously noted, Johnson, in preparing its 1986 Jefferson City directory, did not *first* conduct an independent canvass of the new listings in United's 1985 directory. Instead, as noted, Johnson entered the updated listings in its data base first and *then* proceeded to conduct its independent telephonic canvassing. Thus, Johnson has failed to convince the Court that it satisfied the requirement of "fair use" as established by case law.

Second, Johnson has failed to establish that § 107's "fair use" defense is applicable in this case since the defense clearly appears limited to situations in which the copying is done for purposes such as "criticism, comment, news reporting, teaching ..., scholarship, or research." In this case, Johnson seeks to gain a profit from the publication and distribution of its directory and, thus, does not fall within § 107's meaning of "fair use."[3]

### C. *Remedy*

The Court finds that the summary judgment in favor of United on its claim

---

**2.** As noted by the district court in *Southwestern Bell Telephone Co. v. Nationwide Independent Directory Services, Inc.*, 371 F.Supp. 900 (W.D. Ark.1974):

"It should be made clear here that plaintiff's copyright does not extend to the individual names and addresses listed in its directory, but rather to the compilation of the same. There is nothing to stop another compiler [from] obtaining this information, which is in the public domain, by independent research. To quote 18 Am.Jr.2d Copyright and Literary Property § 118 at page 405:

'A compiler of a directory cannot acquire by a copyright a monopoly of the matter published, so as to preclude another from copying a copyrightable directory along similar lines, where such subsequent compiler investigates and determines for himself the matter to be included from the original sources of information which are open to all.' What a subsequent compiler cannot do is copy from an already copyrighted directory and thereby save himself the labor and expense incurred by the prior compiler." *Id.* at 906.

**3.** Additionally, Johnson also has alleged, in its motion for summary judgment, that United has misused its copyright by attempting to extend its existing monopoly by requiring Johnson to buy listings already owned by Johnson. In other words, Johnson claims that United is attempting to use its position as the possessor of facts needed by Johnson (new listing to enable Johnson to conduct its verification process) to coerce Johnson into licensing and relicensing every year facts already possessed by Johnson through its own independent efforts. The policy underlying the misuse doctrine is designed to

for copyright infringement is warranted and that United is entitled to the relief prayed for in its complaint.

United shall be granted a permanent injunction against Johnson, enjoining Johnson from infringing upon United's copyrights in its directories heretofore published or which may be published in the future. More specifically, Johnson, its agents, servants, and those acting in concert with defendant Johnson are permanently enjoined from infringing upon United's copyrighted directories in any manner, and from publishing, selling, marketing or otherwise disposing of any copies of the book entitled *The Johnson City Directory*, Jefferson City, Missouri 1986.

■ The money damages recoverable for copyright infringement are established in 17 U.S.C. § 504(a) which provides that "an infringer of a copyright is liable for either—

> (1) the copyright owner's actual damages and any additional profits of the infringer, as provided by subsection (b); or
>
> (2) statutory damages, as provided by subsection (c)."

Under § 504(c), a copyright owner may elect between the actual damages and profits set forth in § 504(a)(1) or an award which the Court deems just, which may not be less than $250 or more than $10,000.[4]

Thus, the Court first deems that United is entitled to, as actual damages, an award in the amount of $13,149.89, which represents the loss of the licensing fee which United charges for the use of its directories ($13,014.89), plus administration fees and tape in the amount $135.00.

Additionally, United is entitled to any profits derived by Johnson. In this case, Johnson's net profit from its 1986 Jefferson City directory amounts to $15,764.00. However, as noted by Johnson, since, under § 504(b), only profits of the infringer not taken into account in computing the actual damages may be considered, then the Court must deduct the $13,149.89 in actual damages from Johnson's net profit of $15,764.00. Thus, United is entitled to additional award of $2,614.11 under § 504(b). Therefore, United is entitled to a total damage award in the amount of $15,764.00.

United has also requested an award for their reasonable attorney's fees incurred in pursuing this action. However, in balancing the equities in the case, the Court concludes that United's request for reasonable attorneys' fees must be denied.

Accordingly, it is hereby

ORDERED that defendant Johnson Publishing Company, Inc.'s motion for summary judgment is denied. It is further

ORDERED that plaintiff United Telephone Company of Missouri's motion for

---

prevent a patentee or copyright owner from projecting the economic effect of his admittedly valid grant beyond the limits of his legal monopoly. *See Panther Pumps & Equipment Co. v. Hydrocraft, Inc.,* 468 F.2d 225, 231, 175 U.S.P.Q. 577, 581–582 (7th Cir.1972).

However, in reference to this "misuse" defense, the district court in *Rural Telephone Service Co., Inc. v. Feist Publications, Inc.,* 663 F.Supp. 214, 1987 Copyright Decisions (CCH) ¶ 26,084 (D.Kan.1987), noted:

"The doctrine, however, has never been extended by the Supreme Court to copyright infringement actions. In *United States v. Loew's Inc.,* [1962 TRADE CASES ¶ 70,357], 371 U.S. 38, 45 [83 S.Ct. 97, 102, 9 L.Ed.2d 11] (1962), the Court recognized that copyright owners may sometimes enjoy analogous market dominance over their copyrighted articles, but did not extend the "patent misuse" doctrine to copyright infringement actions. *See*

*e.g. Orth–O–Vision, Inc. v. Home Box Office* [1979–2 TRADE CASES ¶ 62,858], 474 F.Supp. 672, 686 (S.D.N.Y.1979); *Peter Pan Fabrics, Inc. v. Candy Frocks, Inc.,* 187 F.Supp. 334, 336 (S.D.N.Y.1960); *Harms, Inc. v. Sansom House Enterprises, Inc.,* 162 F.Supp. 129, 135 (E.D.Pa.1958). This court is also unwilling to make this leap. We concur with prior case law which holds that antitrust violations do not constitute a defense to copyright infringement." *Id.* 663 F.Supp. at 220, 1987 Copyright Decisions (CCH) ¶ 26,084 at 67,540.

This Court, like the district court in *Rural Telephone Service Co.,* chooses to follow those line of cases which hold that antitrust defenses are inapplicable to copyright infringement cases.

**4.** From what the Court can decipher from United's pleadings, United has elected the actual damages and profits set forth in § 504(a)(1).

summary judgment is granted, and that judgment is entered against defendant in the amount of $15,764. It is further

ORDERED that defendant, its agents, servants and those acting in concert with defendant, are permanently enjoined from infringing upon plaintiff's copyrighted directories in any manner, and from publishing, selling, marketing or otherwise disposing of any copies of the book entitled *The Johnson Directory*, Jefferson City, Missouri 1986. It is further

ORDERED that the parties shall bear their own costs.

## ORDER

Based on defendant's oral motion for stay of execution of the judgment entered by this Court on October 6, 1987, it is hereby

ORDERED that execution of the judgment in this case is stayed pending appeal, provided that defendant post a bond in the amount of $20,000 within ten (10) days from the date of this order, said bond being in the form of an irrevocable letter of credit from the First Interstate Bank of Denver.